**Robert P. TREMBLAY**

v.

**Joseph P. DiCICCO.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 27, 1993.
Decided July 14, 1993.

Jeffrey Lovit, Milbridge, for plaintiff.

Joseph DiCicco, pro se.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

COLLINS, Justice.

Joseph P. DiCicco appeals from the judgment in favor of Robert P. Tremblay, entered in the Superior Court (Washington County, *Smith, J.*), after a jury-waived trial, in a boundary dispute between the parties. DiCicco asserts that the trial court clearly erred in interpreting the deeds in

question and challenges the trial court's finding that he "willfully" destroyed plants, shrubs, and trees located on Tremblay's property in violation of 14 M.R.S.A. § 7552 (Supp.1992). We affirm the judgment.

The two parcels of land in question were conveyed, as a single parcel, to Amos Webb in 1957. Webb divided the property and conveyed the northerly portion to Tremblay's predecessor by a deed, recorded in 1967, that described the parcel as follows:

Commencing at low water mark in Dolley's Head Cove at the Southwest corner of land of Raleigh A. Whalen; thence Southerly by low water mark to a point seventy-five feet in a straight line from the point of beginning; thence Easterly in a straight line to the Southwest corner of land of Walter A. Smith; thence Northerly by the West line of said Smith land to the Southern line of said Whalen land; thence Westerly by said Whalen land to point of beginning.

The remainder of the Webb lot was conveyed to DiCicco's predecessors by a deed, recorded in 1968, describing the parcel as follows:

Commencing at a spring in Dolley's Head Cove; thence proceeding in a generally northerly direction by and with low water mark a distance of one hundred eighty-nine feet (189′), more or less, to the southwesterly corner of [the Tremblay lot]; thence proceeding in a generally easterly direction, by and with the southerly line of [the Tremblay lot] a distance of ten (10) rods, more or less; thence proceeding in a generally southerly direction parallel with the first mentioned bound a distance of one hundred eighty-nine feet (189′), more or less; thence proceeding in a generally westerly direction through the aforementioned spring to low water mark and the point of beginning.

Tremblay purchased the northern parcel in 1983 and DiCicco purchased the southern parcel in 1984. The dispute over the boundary between the Tremblay and DiCicco parcels did not arise until after the parties filled two gullies, which formerly marked the boundary. After the gullies were filled, Tremblay planted trees, bushes, flowers, and plants in that area. DiCicco told Tremblay that this landscaping was partially on DiCicco's lot and Tremblay responded, "once a survey is completed, if all that material is on your line, it is yours to do whatever you want to do with." Despite his knowledge that the boundary was in dispute, DiCicco tore up Tremblay's landscaping and eventually replaced it with a vegetable garden and a large wooden fence.

Tremblay brought an action requesting a declaratory judgment determining the location of the disputed boundary and requesting damages pursuant to 14 M.R.S.A. § 7552 (Supp.1992) for DiCicco's willful destruction of plants, trees, and shrubs on Tremblay's property. Tremblay's surveyor was unable to definitively locate the boundary. DiCicco did not hire a surveyor.

The parties agreed on the location of the southwest corner of the Tremblay lot but disagreed on the location of the southeast corner of the lot. (See attached map). Tremblay introduced the testimony of James Leighton who identified the former location of a stake intended to mark the southeast corner of the Tremblay lot. (See point B on attached map). Leighton testified that he was familiar with the property because he was the person hired to fill the gullies and because he had plowed snow in the area. DiCicco introduced the testimony of the former owner of the Tremblay lot, Earl Bonsey, who testified that the southeast corner of the Tremblay lot was in a different location. (See point A on attached map). Bonsey admitted, however, that he had been on the property only twice since he sold it to Tremblay in 1983 and that the property looked significantly different from when he owned it, especially because the gullies had been filled.

The trial court concluded that, "Mr. Bonsey was mistaken, and that Mr. Leighton's recollection is better as to the location of the stake, marking the southeast corner of the Bonsey or Tremblay lot." The court further found that DiCicco willfully entered Tremblay's property without license

or permission and destroyed Tremblay's plants, shrubs, and trees which were valued at $790. Pursuant to 14 M.R.S.A. § 7552 (Supp.1992), the trial court granted treble damages, attorney fees, court costs, and expert fees. The trial court denied DiCicco's motions for a new trial and for clarification. DiCicco filed a timely notice of appeal.

## I.

### Boundary Determination

■ What boundaries a deed refers to is a question of law but where those boundaries exist on the face of the earth is a question of fact. *Theriault v. Murray*, 588 A.2d 720, 721 (Me.1991). When interpreting a deed, a court should first look for the controlling intent of the parties on the face of the deed. *Taylor v. Hanson*, 541 A.2d 155, 157 (Me.1988). This intent may be unclear, however, if the deed contains a latent ambiguity. *Id.* A latent ambiguity is created in a deed "when, in applying the description to the ground, facts extrinsic to the document controvert or in some way render unclear the deed's apparently unambiguous terms." *Id.*

■ In the case now before us, the Tremblay deed is controlling because the Tremblay conveyance was first in time. The Tremblay deed describes the southeast corner of their lot as "the Southwest corner of land of Walter A. Smith." Tremblay's surveyor testified that using this point as the southeast corner of the lot would extend the boundary of Tremblay's lot across property that both parties agree is part of DiCicco's lot. Because the deed's apparently unambiguous terms are rendered unclear when applied to the face of the earth, the Tremblay deed contains a latent ambiguity. The DiCicco deed, which is junior to the Tremblay deed, does not resolve this ambiguity, despite DiCicco's contention to the contrary. DiCicco's deed describes his northeast corner as being ten rods east of his northwest corner along the southerly line of the Tremblay lot. Tremblay's surveyor testified that terminating the call ten rods from DiCicco's northwest corner would result in the corner being located in a third lot.[1]

■ When a deed contains a latent ambiguity, as here, the trial court must determine the grantor's intent from contemporaneous circumstances and standard rules of construction. *Taylor v. Hanson*, 541 A.2d at 157–58. The trial court established the southern boundary of the Tremblay lot relying on the testimony of James Leighton. "Because the location of monuments and boundaries are questions of fact, the trial court's findings will not be disturbed on appeal unless they are clearly erroneous." *Ricci v. Godin*, 523 A.2d 589, 592 (Me.1987) (citations omitted). A factual finding is clearly erroneous only if there is no competent evidence in the record to support it. *Hamm v. Hamm*, 584 A.2d 59, 62 (Me.1990). The trial court's decision to reject the testimony of Earl Bonsey in favor of that of James Leighton is clearly within the province of the trial court. *See Allen v. Hunter*, 505 A.2d 486, 487 (Me. 1986) ("It [is] within the province of the presiding justice in [a] jury-waived trial to evaluate the [witness's] credibility."). "We give due regard to the opportunity of the trial court to judge the credibility of the witnesses and weigh the evidence." *Gray v. Gray*, 609 A.2d 694, 697 (Me.1992). The record supports the trial court's conclusion in this case. Bonsey had been on the property only twice since 1983 and, because the gullies had been filled, the property looked significantly different than it had in 1983. Leighton, on the other hand, had recently

---

1. DiCicco challenges the assertion that locating his northeast corner ten rods from his northwest corner would place the corner in the third lot. Focussing on the language in his deed describing the eastern boundary of his lot as "parallel with the first mentioned bound [i.e., the shore]," DiCicco asserts that this language required the trial court to draw a straight line between the northwest corner of his lot to a point over the water and apply the ten-rod distance from this point over the water. This contention is meritless. First, the deed states that the eastern boundary is parallel with the shore and not vice-versa. Second, DiCicco admits that the western boundary of his lot is not a straight line extending out over the water, but runs "along the shore."

done substantial work on the property. The trial court's location of the southern boundary of the Tremblay lot, therefore was not clearly erroneous.

## II.

### Willful Conduct Pursuant to Section 7552

■■■ DiCicco further challenges the trial court's finding that he willfully destroyed plants, trees, and shrubs on Tremblay's property, pursuant to 14 M.R.S.A. § 7552 (Supp.1992).[2] He asserts that he was the owner of the property in question until the trial court "nullified" his deed and, therefore, his destruction of Tremblay's plants could not have been the willful destruction of property from land not his own. We disagree. " 'Willfully,' as used in section 7552 ... is intended 'to embrace conduct on the part of the defendant which displays an utter and complete indifference to and disregard for the rights of others.' " *Bonk v. McPherson*, 605 A.2d 74, 77 (Me.1992) (quoting *Guilmet v. Galvin*, 597 A.2d 1348, 1349 (Me.1991)). We have held that "[t]he determination by the trial court as to whether conduct is willful or knowing within the meaning of section 7552 is a question of fact and will not be set aside unless clearly erroneous." *Walsh*

*v. Johnston*, 608 A.2d 776, 778 (Me.1992). After reviewing the record, we conclude that the evidence supports the trial court's finding of willful conduct. DiCicco knew that the boundary between the parcels was in dispute and made no effort to determine the actual boundary before destroying the plants, trees, and shrubs located on Tremblay's property. *See Guilmet v. Galvin*, 597 A.2d at 1350 (upholding finding of willful conduct where defendants made some effort to determine boundary but did not hire surveyor, examine metes and bounds indicated in their deed, or contact plaintiffs or other neighbors to determine the actual boundary).

■■■ Tremblay urges that we impose sanctions against DiCicco pursuant to M.R.Civ.P. 76(f) for appealing the trial court's decision.[3] "We exercise the power to sanction pursuant to Rule 76(f) 'only in egregious cases.' " *Voignier v. Bittner*, 609 A.2d 709, 710 (Me.1992) (quoting *Estate of Bonin*, 457 A.2d 1123, 1125 (Me. 1983)). We do not find this to be such an egregious case.

The entry is:

Judgment affirmed.

All concurring.

**2.** Section 7552 provides in relevant part:

> Whoever cuts down, destroys, injures or carries away any ornamental or fruit tree, ... goods or property of any kind from land not that person's own, without license of the owner ... is liable in damages to the owner in a civil action. If such an act or such acts are committed willfully or knowingly, the defendant is liable to the owner in treble damages and, in addition, for the cost of any professional services necessary for the determination of damages, for attorney's fees, and for court costs.
>
> 14 M.R.S.A. § 7552 (Supp.1992).

**3.** M.R.Civ.P. 76(f) provides that:

> [If we determine] that an appeal ... is frivolous or instituted primarily for the purpose of delay, it may award to the opposing parties or their counsel treble costs and reasonable expenses, including attorney's fees, caused by such action.

## ATTACHMENT

A = stake positioned by Earl Bonsey
B = stake positioned by James Leighton (chosen by court)
C = line drawn by soil engineer