2012 ME 84

**Andrew WEINSTEIN et al.**

**v.**

**Richard HURLBERT et al.**

Supreme Judicial Court of Maine.

Argued: May 10, 2012.

Decided: June 28, 2012.

David J. Perkins, Esq. (orally), and N. Quinn Collins, Esq., Perkins Olson, P.A., Portland, for appellants Richard Hurlbert, Audrey McGlashan, and Hurlbert–McGlashan, LLC.

Judy A.S. Metcalf, Esq. (orally), and Ryan P. Dumais, Esq., Eaton Peabody,

Brunswick, for appellees Andrew and Melinda Weinstein.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Richard Hurlbert, Audrey McGlashan, and Hurlbert–McGlashan, LLC (collectively, Hurlbert) appeal from a judgment of the Superior Court (Knox County, *Hjelm, J.*) declaring that Andrew and Melinda Weinstein (collectively, Weinstein) hold title to a portion of land through adverse possession. Hurlbert argues that the trial court erred because Weinstein failed to satisfy his burden of establishing the required elements of an adverse possession claim. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] Hurlbert has record title to several parcels of land in Owls Head, including a portion of waterfront property known as Cliff Street that extends from the end of Beach Street south and adjacent to the water.[1] Weinstein owns property within the "L" created by the intersection of Beach and Cliff Streets, abutting Hurlbert's property. Cliff Street forms the record eastern boundary of Weinstein's property. This action arises from the parties' dispute about ownership of the Cliff Street property.

[¶ 3] A jury-waived trial was held in the Superior Court at which a number of

neighbors and former property owners from the neighborhood surrounding Cliff Street testified about the use of the property over time.[2] With respect to Weinstein's adverse possession claim, the court found the following facts, which have support in the record.

[¶ 4] Morris and Barbara Coates previously owned the property now owned by Weinstein (the "Weinstein property") that is adjacent to the Cliff Street property. The Coateses acquired the Weinstein property in 1984,[3] and began to maintain the Cliff Street property by mowing the lawn, first themselves, and then by hiring a friend and nearby resident to help. This friend mowed the area before the Coateses' arrival for the summer months and transplanted rosa rugosa bushes in a row along the seaward edge of the lawn area on the Cliff Street property.[4] Barbara Coates maintained and pruned the plantings and gardened on the Cliff Street property.

[¶ 5] When Weinstein acquired the property in 2004, he rebuilt the house and began to occupy it for the summer in 2005. During construction, workers stored building materials on the Cliff Street property. Because the construction and storage of materials damaged the lawn, Weinstein had the area regraded and reseeded. The Weinsteins maintained the Cliff Street property in a manner similar to the Coateses: they mowed the lawn, or hired someone to mow; they pruned the rosa rugosa bushes; and they otherwise kept

---

1. There is no dispute that Hurlbert holds record title to the Cliff Street property.

2. At trial, the parties presented additional issues about the ownership and access to the Cliff Street property, including claims for prescriptive easements, declaratory judgment regarding ownership, and nuisance. Because Hurlbert only appeals from the portion of the

judgment addressing adverse possession, the additional claims will not be addressed.

3. Weinstein argues that the Coates's acquisition of the property in 1984 began the prescriptive period.

4. The rosa rugosa bushes mark the eastern boundary of the area in dispute.

up the area. When Hurlbert's predecessor-in-interest posted a notice intended to prevent a prescriptive easement claim, as well as stakes marking the property boundary, Weinstein removed the sign and the stakes. Weinstein's general maintenance ended when Hurlbert began to mow the Cliff Street property in 2009, after having acquired title in 2008. However, between 1984 and 2008, no one other than the Coateses and the Weinsteins maintained the Cliff Street property.

[¶ 6] Other members of the community historically used the Cliff Street property but that use diminished in the mid–1980s. Before the mid–1980s, local residents used the property for games of horseshoes and as a place for children to play. Later, children of the family that owned the property abutting the southern boundary of the Weinstein property used the Cliff Street property to cross between their land and the Beach Street area. Boats were infrequently left on the lawn of the Cliff Street property, but this practice was limited after the mid–1980s. The only person who left a boat on the lawn for more than a brief moment during transport was the same friend of the Coateses who planted the rosa rugosa bushes and helped them maintain the Cliff Street property. There was evidence that a prior owner of another portion of Hurlbert's property used the Cliff Street property as a turnaround for his car, but there was no evidence about how often he did this.

[¶ 7] The court entered a written decision and judgment declaring that Weinstein holds title to the Cliff Street property by adverse possession.[5] The court

undertook a comprehensive analysis and, after observing that the acquisition of land by adverse possession is disfavored, *see Striefel v. Charles–Keyt–Leaman P'ship*, 1999 ME 111, ¶ 4, 733 A.2d 984, concluded that Weinstein had proved that he and his predecessors-in-title had used the disputed property for a period of at least twenty years in a manner that satisfied the recognized criteria for adverse possession, *see Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234. Hurlbert appeals.

## II.  LEGAL ANALYSIS

■■■ [¶ 8] "A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period." *Id.* Because a claim of adverse possession is a mixed question of law and fact, "whether the necessary facts exist is for the trier of fact, but whether those facts constitute adverse possession is an issue of law for the court to decide." *Id.* ¶ 11 (quotation marks omitted).

■■■ [¶ 9] Here, there is no indication that either party requested additional findings of fact pursuant to M.R. Civ. P. 52(a). Therefore, "we will infer that the court made all findings necessary to support its conclusions, and we will review the court's express and inferred findings of fact for clear error." *Weeks*, 2008 ME

---

5.  The Cliff Street property was described in the judgment as follows:

a portion of the land described in a deed to defendants Richard Hurlbert and Audrey McGlashan recorded at book 3924 page 228 in the Knox County Registry of Deeds, such portion consisting of land bounded to the

south by the land owned by Seagrave Cottage, LLC; to the west by the land that the plaintiffs owns [sic] through record title; to the north by Beach Street; and to the east by a line that runs on the seaward side of the rosa rugosa bushes.

120, ¶ 11, 955 A.2d 234. The trial court's findings will be affirmed if supported by competent evidence. *Id.*

[¶ 10] Hurlbert contends that the trial court's decision was at odds with our precedent, particularly with respect to our decision in *Weeks v. Krysa,* 2008 ME 120, ¶ 1, 955 A.2d 234. Hurlbert asserts that the Coateses' and Weinsteins' use of the Cliff Street property was no more notorious or hostile than the use at issue in *Weeks*—"casual, seasonal use of an undeveloped waterfront lot," *id.* ¶ 2, which included recreational use, *id.* ¶ 9, maintenance of a garden that encroached on to the property, *id.* ¶ 18, and occasional brush and tree cutting, *id.* ¶¶ 6, 19.

[¶ 11] Although the trial court distinguished the facts of *Weeks* from those of the present case by concluding that the property was not a "vacant shorefront lot," but instead, "the waterfront lawn of the house now owned by Weinstein" and "a prominent part of the outdoor living space connected specifically to the residence," we cannot agree that the minor factual differences supporting this conclusion are sufficient to establish that the Weinsteins' and their predecessors' use of the property was hostile and notorious. For the full prescriptive period, the adverse use of the property was limited to seasonal lawn mowing, the planting and pruning of several bushes, minimal gardening, a single instance in which building supplies were stored on the property, and removal of a posted notice intended to prevent a prescriptive easement and stakes placed on the property by the record owner.

[¶ 12] The "notorious" and "hostile" elements of adverse possession require more. Seasonal grass mowing is not enough. *Cf. Dowley v. Morency,* 1999 ME 137, ¶ 16, 737 A.2d 1061 (noting, for the purposes of boundary acquiescence, that "the mere cutting of grass is insufficient to produce a visible line of occupation"). Although more than grass mowing was found to have occurred here, the additional adverse acts were also seasonal, or largely isolated events. Nor were those adverse acts made more compelling by evidence that other neighbors occasionally used the property in a manner consistent with uses typically made of vacant land in a neighborhood. *See Weeks,* 2008 ME 120, ¶ 15, 955 A.2d 234 (noting Maine's "open lands tradition"). In light of the public policy disfavoring the acquisition of land through adverse possession, Weinstein's use of the property was not sufficiently hostile and notorious to put the true owner "on notice that the land in question is actually, visibly, and exclusively held by a claimant in antagonistic purpose," *id.* ¶ 13 (quotation marks omitted).

The entry is:

Judgment vacated. Remanded for entry of judgment consistent with this decision.