MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2014 ME 148
Docket:       Aro-14-97
Argued:       November 6, 2014
Decided:      December 23, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
              JJ.

## CHRISTOPHER GRONDIN et al.

### v.

## SUSAN R. HANSCOM

JABAR, J.

[¶1]   Susan R. Hanscom appeals from the Superior Court's (Aroostook County, *Hunter, J.*) declaratory judgment establishing her property boundaries and those of Christopher and Diana Grondin.  Hanscom contends that the court erred in (1) declaring that the properties' boundaries are as indicated on a survey by Charles Marchese, (2) finding that she had not gained title by acquiescence, and (3) finding only partially in her favor on her claim of adverse possession.  Finding no error, we affirm the court's judgment.

## I.  FACTS

[¶2]   After an evidentiary hearing, the court found the following facts, which are supported by the record.  Hanscom's and the Grondins' properties previously constituted a single parcel owned by Harriet Decker (the "Decker Lot," depicted in

2

the diagram below as rectangle ADEG). In 1962, Decker conveyed to Quentin and Ruth Haney a 100-foot-wide parcel (the "Haney Lot") on the eastern side of the Decker Lot. The property was described as follows:

> Beginning at an iron pipe driven in the ground at the southeasterly corner of [the Decker Lot] . . . thence *northerly along grantor's easterly line* [309.6 feet] to a point of intersection of the southerly line of Bliss Deering and the easterly line of said grantor; thence westerly along the said Deering south line [112 feet] to a point marked by an iron pipe driven in the ground; thence southerly bearing south 25 degrees west . . . *and parallel to the east line*[1] [354 feet] to an iron pipe driven in the ground near the shore of Deering Lake; thence easterly along the north shore of said Lake [101 feet] more or less, to the point of beginning.

(Emphasis added.) The deed further stated that it was intended "to convey a strip of land [100 feet] wide off the easterly side of [the Decker Lot]."

[¶3] The Haney Lot was conveyed to Susan Hanscom in 1980.[2] The deed to Hanscom used the same property description as the deed to the Haneys. The remainder of the Decker Lot was ultimately conveyed to Christopher and Diana Grondin in 2006.[3]

---

[1] The parties agree that there is no line that both bears south twenty-five degrees west and runs parallel to the Decker Lot's eastern border.

[2] The land was originally conveyed to Hanscom and her former husband, but Hanscom later acquired title to the entire parcel pursuant to a divorce decree.

[3] The configuration of the Decker Lot's remainder is dependent upon the boundaries of the Haney Lot. If the Haney Lot's boundaries are, as Hanscom contends, as they are indicated on the Swallow survey, *see infra* ¶ 5, then the remainder of the Decker Lot includes a triangular parcel situated generally east of the Haney Lot, with the base of the triangle to the north and the apex to the south (depicted as triangle CDE on the diagram below). Notably, no transfers of the Decker Lot remainder refer to such a parcel. If, on the other hand, the Haney Lot's boundaries are as indicated on the Marchese survey, *see*

[¶4]   Beginning in 1981, Hanscom began using the camp that sits on the Haney Lot as a year-round home, and she made various improvements to the property.  In 1983, Hanscom constructed a garage and a gravel driveway on an area of land that she believes is part of the Haney Lot, but that the Grondins believe is part of the remainder of the Decker Lot.  In 1985, she planted a row of pine trees within the disputed area.  In 2005, she drilled a well behind the garage and installed a pump to connect the well to her home plumbing.  Several trees within the disputed area are marked with red or orange blaze.  The disputed area remains otherwise undeveloped and consists mostly of overgrown brush.

[¶5]   In 2010, Kilburn Swallow completed a survey that found that Hanscom's property consists of a 100-foot-wide westward-leaning parcel, the eastern boundary of which begins at the southeastern corner of the Decker Lot and then proceeds at a northwesterly angle rather than along the Decker Lot's eastern border.  Swallow found that Hanscom's western border runs parallel to the angled eastern border, thus creating a parallelogram-shaped parcel (depicted as parallelogram BCEF on the diagram below).  In 2011, Charles Marchese completed a survey that found that Hanscom's property consists of a rectangular parcel with an eastern border that is the same line as the eastern boundary of the

_infra_ ¶ 5, then the remainder of the Decker Lot is a single parcel to the west of the Haney Lot.  The configuration of the Decker Lot's remainder as found by the Marchese survey and accepted by the Superior Court is depicted as rectangle ACFG on the diagram below.

4

original Decker Lot and a western border parallel to that eastern border (depicted as rectangle CDEF on the diagram below). Thus, line BF depicts the common boundary between Hanscom's and the Grondins' properties as found by Swallow, and line CF depicts the common boundary as found by Marchese. The shaded triangle BCF represents the disputed area.



## II. PROCEDURAL BACKGROUND

[¶6] Following receipt of the competing surveys, the Grondins filed suit seeking a declaratory judgment establishing the common boundary between their property and Hanscom's. Hanscom filed a counterclaim also seeking a declaratory judgment as to the common boundary and alternatively seeking title to the disputed area through the doctrines of acquiescence and adverse possession.

[¶7]   The court conducted a view of the property before hearing testimony from both surveyors.  It then entered judgment finding that (1) Hanscom's property is, as the Grondins contend, controlled by the Decker Lot's eastern border as found by the Marchese survey; (2) Hanscom did not establish title by acquiescence because she failed to prove by clear and convincing evidence "possession of the disputed property up to a visible line marked by monuments, fences or the like"; and (3) Hanscom established title by adverse possession only as to the land occupied by the garage and driveway leading thereto.[4]  Hanscom appealed.[5]

## III.  DISCUSSION

### A.    Boundary Declaration

[¶8]   Hanscom contends that the court erred in accepting Marchese's survey and its conclusions as to her property's boundaries.  The court's determination of the location of property boundaries on the face of the earth is a question of fact, which we review for clear error.  *Matteson v. Batchelder*, 2011 ME 134, ¶¶ 12, 16, 32 A.3d 1059.  A factual finding is clearly erroneous only if no competent

---

[4]  The court's initial February 6, 2014, decision retained jurisdiction over the matter for twenty days to allow counsel the opportunity to suggest revisions that would provide clearer descriptions of the boundaries of the properties involved.  On April 7, 2014, the court issued an amended decision, which retained the same findings but noted that the Marchese survey had been recorded in the Southern Aroostook Registry of Deeds.

[5]  Per the court's February 6 decision, appellate time periods were not to commence until after expiration of the twenty-day period on February 26, 2014.  Hanscom filed her notice of appeal on February 27, 2014.  On April 7, 2014, following a conference with the parties, the Superior Court issued an amended decision as its final judgment.  Hanscom thus appeals from the court's amended decision.  *See* M.R. App. P. 2(b)(1).

6

evidence supports it. *Tremblay v. DiCicco*, 628 A.2d 141, 143 (Me. 1993). In making a boundary determination, the weight to be given to a surveyor's opinion is the prerogative of the court as fact-finder. *Dupuis v. Soucy*, 2011 ME 2, ¶ 20, 11 A.3d 318; *McGrath v. Hills*, 662 A.2d 215, 218 (Me. 1995). Boundaries are controlled, in descending priority, by monuments, courses, distances, and quantity, unless this priority produces results that are absurd or wholly inconsistent with the grantor's intent. *See Wells v. Powers*, 2005 ME 62, ¶ 3, 873 A.2d 361; *McGrath*, 662 A.2d at 218. An adjoining boundary line is a controlling monument, and thus has "priority over courses and distances or quantity descriptions in a deed." *Howe v. Natale*, 451 A.2d 1198, 1202 (Me. 1982). In fixing property boundaries where a deed description contains a latent ambiguity—that is, an ambiguity that becomes apparent when the deed's otherwise unambiguous description is applied to the ground—the court must determine the grantor's intent in light of the above rules of construction. *Tremblay*, 628 A.2d at 143.

[¶9]    In *McGrath*, for example, we held that the court's boundary determination that was based on a surveyor's testimony was not clearly erroneous, even though the survey "disregarded the starting point of the description in the . . . deed" and raised questions about the dimensions of adjoining properties. 662 A.2d at 218. We reasoned that there was competent evidence for the court to find that the surveyor's explanation was "the most complete and reasonable" where

it reconciled ambiguities and prioritized a call to abut an adjoining property over a call to a specific distance. *Id.*

[¶10] Here, the court accepted Marchese's survey as the more complete and reasonable explanation of the disputed properties' boundaries, and there was competent evidence to support the court's determination. The Marchese survey reconciled ambiguities in the deed to Hanscom, which called for an eastern border along the eastern line of the Decker Lot and a western border that was *both* parallel to the eastern line *and* "bearing south 25 degrees west." The Marchese survey also properly regarded the calls to borders as superior to those of distance or degree. Finally, and significantly, the Marchese survey gives effect to the likely intent of the Haney Lot conveyance, which is stated in the deed itself. As the court opined, "[i]t seems highly unlikely . . . that the grantor would have intended to convey a parallelogram shaped piece of land while retaining a remaining triangular piece with shore frontage so limited that one would be hard pressed to enter the lake for a swim without trespassing." *See also Proctor v. Hinkley*, 462 A.2d 465, 472 (Me. 1983) (concluding that a boundary line leaving little or no lake frontage was absurd and inconsistent with other provisions in a deed description). The Marchese survey was thus sound in both law and fact, and the court was free to accept its findings.

8

B.    Title by Acquiescence

[¶11]    Hanscom next contends that the court erred in determining that she had not obtained title to the disputed area by acquiescence.  We review the court's findings of fact regarding title by acquiescence for clear error, and will affirm such findings if they are supported by competent evidence.  *Taylor v. Hanson*, 541 A.2d 155, 159 (Me. 1988).  To establish title by acquiescence, a party must prove the following by clear and convincing evidence:

(1) possession up to a visible line marked clearly by monuments, fences, or the like;
(2) actual or constructive notice to the adjoining landowner of the possession;
(3) conduct by the adjoining landowner from which recognition and acquiescence . . . may be fairly inferred; [and]
(4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well served by recognizing the boundary.

*Dowley v. Morency*, 1999 ME 137, ¶ 16, 737 A.2d 1061.  Clear and convincing evidence is evidence that provides the fact-finder with an abiding conviction that the truth of the proponent's contentions is highly probable.  *Hamlin v. Niedner*, 2008 ME 130, ¶ 8, 955 A.2d 251.

[¶12]    Here, the court conducted a view of the property and found that, although there were blaze markings on several trees in the area, the markings were ambiguous and did not persuade it to a high probability that they represented a line of occupation.  Further, evidence was presented and the court observed for itself

that the majority of the contested area outside of the garage and driveway consisted of overgrown brush. We therefore cannot say that the court erred in finding that there was no "possession of the disputed property up to a visible line" sufficient to support Hanscom's claim of title by acquiescence. In view of the failure of proof on this element, we need not address the remaining elements of the doctrine.

C.    Adverse Possession

[¶13] Finally, Hanscom contends that the court erred in finding that she had sustained her adverse possession claim only as to the footprint of her garage and driveway, rather than to the entire disputed area. Adverse possession presents a mixed question of fact and law. *Weinsten v. Hurlbert*, 2012 ME 84, ¶ 8, 45 A.3d 743. "[W]hether the necessary facts exist is for the trier of fact, but whether those facts constitute adverse possession is an issue of law . . . ." *Id*. (quotation marks omitted). We review findings of fact regarding adverse possession for clear error, and affirm them if they are supported by competent record evidence. *Id*. ¶ 9. To succeed on an adverse possession claim, a party must prove by a preponderance of the evidence that "possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period." *Id*. ¶ 8. (quotation marks omitted). "[A]dverse possessors typically only acquire

that property which they actually possessed." *D'Angelo v. McNutt*, 2005 ME 31, ¶ 9, 868 A.2d 239.

[¶14]  In *Dowley*, we held that the claimant failed to adversely possess the entirety of the disputed area when the claimant's actual use of the land was limited to a driveway and a parking area that constituted "only a fraction of the disputed area."  1999 ME 137, ¶ 20, 737 A.2d 1061.  We have likewise held that there is insufficient proof of adverse possession where the claimant's use of only a portion of the land did not put the landowner on notice of the adverse possession, and much of the disputed area was "overgrown with bushes and weeds."  *Harkins v. Fuller*, 652 A.2d 90, 92 (Me. 1995).

[¶15]  Since 1983, Hanscom openly and notoriously possessed the land on which her garage and driveway sit.  As to the remainder of the disputed area, however, the court did not err in finding no such open, notorious, and continuous possession.  The majority of the disputed parcel consists of overgrown brush and, although Hanscom planted a row of pine trees as a privacy border in 1985, the court could have reasonably determined that this did not amount to open and notorious possession sufficient to impart notice upon landowners to the west. Likewise, the "ambiguous" blaze marks on trees within the disputed area are not sufficiently open or notorious.  Finally, the well and related plumbing Hanscom

installed within the disputed territory in 2005 have not been in place for the requisite twenty-year statutory period.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Richard L. Currier, Esq., and Jon P. Plourde, Esq., Currier & Trask, P.A., Presque Isle, for appellant Susan R. Hanscom

Edmond J. Bearor, Esq., and Brent A. Singer, Esq., Rudman Winchell, Bangor, for appellees Christopher Grondin and Diana Grondin

**At oral argument:**

Jon P. Plourde, Esq., for appellant Susan R. Hanscom

Edmond J. Bearor, Esq., for appellees Christopher Grondin and Diana Grondin

Aroostook County Superior Court (Houlton) docket number RE-2011-20
FOR CLERK REFERENCE ONLY