MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2024 ME 69
Docket:          Yor-23-351
Submitted
  On Briefs:     March 27, 2024
Decided:         August 29, 2024

Panel:           STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

LONGVIEW HOTEL CONDOMINIUM ASSOCIATION

v.

PEARL INN CONDOMINIUM ASSOCIATION

DOUGLAS, J.

[¶1]   Longview Hotel Condominium Association (Longview) appeals from a judgment entered by the Superior Court (York County, *Mulhern J*.) declaring that Pearl Inn Condominium Association (Pearl) acquired by adverse possession a strip of land on Longview's property on which owners of units in Pearl parked their vehicles.   Longview contends that the court erred in (1) determining that the "continuous use" element of adverse possession was satisfied and (2) setting the boundaries of the land acquired by adverse possession.   We affirm the judgment in part and vacate in part.

## I.  BACKGROUND

[¶2]  The Longview property consists of a beach-front building with six condominium units and an adjacent parking lot at 1 Pearl Avenue in Old

2

Orchard Beach. The Pearl property consists of a building with eight condominium units (and a separate parking lot not at issue in this case) at 3 Pearl Avenue.

[¶3] Longview's parking lot is bounded by the Longview building; the Pearl building; Pearl Avenue; and the beach. Figure 1 depicts (with shaded borders) the Longview building (upper left) and the Pearl building (lower right). Longview's parking lot is seen immediately to the left (beach side) of the Pearl building.



*Figure 1*[1]

---

[1] Figure 1 (and Figures 2 and 3, below) are offered for illustrative purposes only.

[¶4]   The deeded boundary between the Longview and Pearl properties along the southeasterly (beach) side and southwesterly (back) side of the Pearl building is the bold line in Figure 1.  It begins at the northerly (lower right) corner of Longview's property (at Pearl Avenue) and then runs in a southwesterly direction (toward the Longview building) along a course parallel to, and approximately three feet from, the side of the Pearl building for a distance of forty-five feet to a point approximately two feet behind the external staircase that is part of the Pearl building; and then turns ninety degrees to run in a northwesterly direction along a course parallel to, and approximately two feet from, the back side of the Pearl building.

[¶5]   The external staircase is approximately seven feet wide; it serves as the emergency egress for two units in the Pearl building.  The deeded boundary between the Longview and Pearl properties described above bisects the external staircase such that the part of the stairs closer to the Pearl building are on Pearl's side of the line and the part of the stairs farther from the building are on Longview's side of the line.  Thus, the outer part of the external staircase sits on Longview's property.  The distance from Pearl Avenue to the back edge of the external staircase is forty-three feet.  The record, however, does not indicate the distance from Pearl Avenue to the front edge of the staircase.

4

[¶6]   The dispute in this case centers upon the rectangular area immediately adjacent to the Pearl building, which straddles the deeded boundary between the two properties, from Pearl Avenue to the front edge of the external staircase, as represented in the area outlined in bold lines in Figure 2.[2]

*Figure 2*

[2]   Longview is not challenging the court's finding of adverse possession with respect to the four-foot portion of the external staircase on its side of the boundary.  The parties also agree on the location of the boundary between the two properties.  Thus, it is undisputed that the three-foot strip of the paved area closest to Pearl's building is Pearl's property.  The parties and the trial court characterize the "disputed area" or "disputed space" as the entire rectangular area from the staircase to the road, even though the "inner" three-foot strip closest to the building is Pearl's property.  For the sake of clarity, we also refer in this opinion to the entire space from the staircase to Longview's Pearl Avenue boundary as the disputed area, even though, strictly speaking, the area subject to Pearl's adverse possession claim falls on Longview's side of the boundary only.  On remand, the parties and the court should be careful to ensure that the description of the adversely possessed area is accurate.

[¶7]  Occupants of the Pearl building have been parking their vehicles in the disputed area for decades.  In 1992, Roch Rodrigue purchased and began using Unit 1 in the Pearl building regularly on weekends.  Rodrigue purchased Unit 1 from Ruth Morin, the original owner of the unit.  Morin also owned a unit in the Longview building.  Before 1992, Morin parked in the disputed area.  From the time he purchased Unit 1, Rodrigue has consistently parked in the disputed area when staying in his unit.

[¶8]  From 1995 to 2003, Rodrigue's father-in-law and mother-in-law—Albert and Loraine Berticelli—resided in Unit 1 full-time.  The Berticellis parked their vehicle year-round in the disputed area.[3]  Following the Berticellis' deaths in 2003, Rodrigue resumed regular use of his unit and parked in the disputed area.

[¶9]  In October 2002, Margaret and Peter Frongillo purchased a unit in the Longview building.  They park their vehicles in the Longview lot next to both the external staircase and the disputed area.  Margaret testified that they

---

[3]  In 1997, while the Berticellis were living in Unit 1, a Longview unit owner complained about a Pearl resident's use of the disputed area.  In response, a survey was conducted.  The survey confirmed that both the external staircase and the area in dispute straddled the boundary between Longview's and Pearl's properties.  Pearl's attorney at the time wrote to the Longview unit owner (as well as the developer of the condominium) and advised that Pearl believed it had acquired the rights to the entire staircase and disputed area.  Longview did not take legal action to contest Pearl's position until it filed this action in December 2021.

6

had parked their daughter's car in the disputed area for several months in 2004, from January to May or June, while their daughter was studying abroad. Rodrigue testified, however, that he and his wife visited their unit often during that same time period, parked their vehicle in the disputed area, and did not see any other vehicles parked there. Rodrigue also testified that during the entire time he has owned Unit 1—from 1992 on—he has not seen a Longview resident park in that space until after this action was filed in 2021.[4]

[¶10] Around May or June 2004, Rodrigue offered to allow the owner of another unit in the Pearl building, Norman St. Pierre, to park his vehicle in the disputed area. Rodrigue offered to St. Pierre and his wife use of the disputed area because they were elderly and it was closer to their unit than their assigned parking space on the other side of the Pearl building.

[¶11] At the time, the St. Pierres spent winters in Florida and lived in Old Orchard Beach during the warmer seasons. They parked their vehicle in the disputed area seasonally—from May to November—from 2004 to 2016. Meanwhile, in 2008, Rodrigue rented Unit 1 to Karen English on a year-round

---

[4] Another Pearl resident, Lauretta D'Orazio, who purchased a unit in the Pearl building in 2004 and has lived there permanently since 2010, also testified that she had not seen a Longview resident park in the disputed area until several months before Longview filed this action in 2021.

basis. She parked her vehicle in the disputed area during the winter, when the St. Pierres were in Florida.

[¶12] In 2016, the St. Pierres sold their Florida property and began living full-time in Maine. From 2016 until they sold their unit in the Pearl building in 2020, the St. Pierres used the disputed area as their parking space year-round. After they moved, English resumed parking there year-round and continued to do so until Longview filed this suit in 2021.

[¶13] Longview commenced this action against Pearl in the Superior Court on December 9, 2021. The complaint asserted claims of common law and statutory trespass (Counts 1 and 2, respectively) as well as nuisance (Count 4), and sought damages and injunctive relief. In addition, the complaint requested that the court quiet title (Count 3) and issue a declaratory judgment affirming Longview's rights to the entirety of the property located at 1 Pearl Avenue (Count 5).

[¶14] Pearl answered and counterclaimed, asserting that it had obtained a prescriptive easement in the entire staircase on Longview's property and in the disputed area (Counterclaim Count 1) or, alternatively, it had obtained title to these areas by adverse possession (Counterclaim Count 2) and boundary by

8

acquiescence (Counterclaim Count 3).  Pearl later amended its answer to add a counterclaim for trespass (Counterclaim Count 4).

[¶15]  Following a bench trial in March 2023, the court entered judgment in favor of Pearl on Counts 1 and 2 of its counterclaim,[5] stating:

> The court concludes that, through adverse possession, Pearl Inn Condominium Association has acquired title to *the strip of land beginning at the backside of Pearl's external staircase and running northeasterly – with the same width as the staircase – to Pearl Avenue.* Defendant shall submit a proposed judgment[] conforming to statutory requirements governing the form of such judgment.

(Emphasis added.)  The judgment generally described the adversely possessed area but did not provide a specific metes-and-bounds description.  Instead, the court directed Pearl to submit a proposed judgment "conforming to statutory requirements governing the form of such judgment" for the court's review.

[¶16]  Subsequently, Pearl submitted a proposed judgment and decree with the following specific metes-and-bounds description of the adversely possessed area:

> *Beginning at a point which is ten (10) feet southeasterly of the extension and prolongation of the southwesterly side of the Pearl Inn*

---

[5]  The court also granted judgment in Pearl's favor on the corresponding counts in Longview's complaint—Count 3 (quiet title) and Count 5 (declaratory judgment).  In addition, the court granted judgment in favor of Pearl on all remaining counts of Longview's complaint; granted judgment in favor of Longview on Pearl's claim of title via boundary by acquiescence (Counterclaim Count 3); and granted judgment in favor or Pearl on its trespass against Longview (Counterclaim Count 4), which was based on evidence that Longview residents had parked in the disputed area during the pendency of this litigation.  No damages were awarded, however, on the trespass claim.

*Condominium building . . .*; thence northeasterly along a line which is parallel to and *ten (10) feet distance throughout from the southeasterly side of the Pearl Inn Condominium building a distance of forty-five feet (45.00') more or less* to the southwesterly sideline of Pearl Avenue; thence northwesterly along the southwesterly side of Pearl Avenue to the easterly corner of said Pearl Inn Condominium Association's land; thence southwesterly along the southeasterly sideline of said Pearl Inn Condominium Association forty-five feet (45') more or less to the intersection the said line which is the extension and prolongation of the southwesterly side of the Pearl Inn Condominium building; thence southeasterly along the said extension and prolongation to the point and place of beginning.

(Emphasis added.) Longview objected, contending that the parcel described in the proposed judgment was larger than the area that the court had found adversely possessed and did not conform with the evidence.

[¶17] The court denied the objection, adopted Pearl's proposed description, and amended its final judgment accordingly. The court reasoned that the boundaries described in the proposed judgment accurately reflected "the strip of land that was historically used for parking," and "the description of the strip of land in the [court's] Final Judgment did not carry out the [c]ourt's intention as it was too small to allow for effective parking." Longview timely filed this appeal. M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A.   Continuous Use

[¶18]   Longview challenges the court's determination of adverse possession but focuses only on the required elements of continuous possession and use over twenty years.  *See, e.g., Hennessy v. Fairley*, 2002 ME 76, ¶ 25, 796 A.2d 41 (stating that a party must show by a preponderance of the evidence that its possession and use of the disputed land was "(1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) of a duration exceeding the twenty-year limitations period" (quotation marks omitted)).

[¶19]   "Whether specific acts are sufficient to establish the elements of adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *Weeks v. Krysa*, 2008 ME 120, ¶ 13, 955 A.2d 234 (quotation marks omitted). With respect to the particular element of continuous possession and use, a claimant is required to demonstrate only "the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property." *Fissmer v. Smith,* 2019 ME 130, ¶ 43, 214 A.3d 1054 (quotation marks omitted); *Striefel  v. Charles-Keyt-Leaman  P'ship*, 1999  ME  111,  ¶  16,  733  A.2d  984.

Continuous use "does not necessarily require daily, weekly, or even monthly use." *Almeder v. Town of Kennebunkport,* 2014 ME 139, ¶ 22, 106 A.3d 1099.

[¶20]   Longview specifically argues that the "nature and use of the disputed area is year-long" and Pearl did not prove year-round use for the requisite twenty-year period.  Further, it challenges the court's determination that seasonal use was sufficient and maintains that "no evidence was offered to support the [c]ourt's finding that the nature and use of the disputed area was 'seasonal.'"

[¶21]  Since a claim of adverse possession presents a mixed question of fact and law, we "will uphold a trial court's determination that a claimant established each of the elements of adverse possession" if that determination is supported by credible evidence.  *Striefel*, 1999 ME 111, ¶ 7, 733 A.2d 984.  Contrary to Longview's contentions, there is sufficient credible evidence to support the trial court's finding that the continuous use of the disputed area by Pearl residents for parking for well over twenty years is consistent with the kind of use and enjoyment that an average owner would make of the property. *See Almeder,* 2014 ME 139, ¶ 22, 106 A.3d 1099.

[¶22]  The area in dispute is situated in a parking lot adjacent to two seaside condominium complexes in Old Orchard Beach, a well-known vacation

12

destination. The evidence, as summarized below, clearly established that the adversely possessed area was used for decades by owners and occupants of the Pearl building, namely the owner or other occupants of Unit 1 or those with the Unit 1 owner's permission.[6] Some of them resided in the Pearl building year-round and used the disputed area for parking daily. Others, including the owner, used Unit 1 on a periodic basis or seasonally, and parked in the disputed area regularly while there. In sum:

- beginning in 1992, the Rodrigues used the area on weekends;

- from 1995 to 2003, the Berticellis parked there on a year-round basis;

- from 2003 to the spring of 2004, the Rodrigues resumed use of their unit and parked in the disputed area, not only on weekends but at other times during the week;

- from 2004 to 2016, the St. Pierres lived in their Pearl building unit seasonally and then year-round from 2016 to 2020, and parked in the disputed area daily during those times and;

- beginning in 2008, with Rodrigue's permission, the tenant renting Unit 1 used the disputed area for parking during winters when the St. Pierres were in Florida. The tenant used the disputed area for parking year-round after the St. Pierres sold their unit in 2020.

---

[6] The court also properly found that the "use and possession of the [disputed area] by Mr. Rodrigue, the Berticellis, Mr. St. Pierre, and later Ms. English were not random, independent occupations" and when tacked together satisfy the requisite twenty-year period for adverse possession. *Cf. Blackmer v. Williams*, 437 A.2d 858, 860 (Me. 1981) ("The general rule of law is that successive periods of use may be added or 'tacked' together in order to satisfy the prescriptive period when privity exists between the users." (citation omitted)).

[¶23]  The trial court correctly determined that, in these circumstances, continuous use "does not require a full-time resident to park in the [disputed area] seven-days-a-week, year round."  There was ample evidence to support the court's finding of continuous possession and use.  Conversely, there was scant, if any, evidence that Longview unit owners made any use of the same area during that time.[7]  Nor did Longview take any steps to contest Pearl's usage and claim of right until it filed this action in December 2021, despite having been on notice as early as 1997.

## B.    Description of Land Adversely Possessed

[¶24]   Longview contends that the court erred in accepting Pearl's proposal for the final metes-and-bounds description of the area adversely possessed because the description did not conform with either the evidence or the court's initial order.  We agree in part with Longview's challenge on this ground.

---

[7]  As the fact finder, the court was free to credit Rodrigue's testimony that contradicted the testimony of the Longview resident who said her daughter's car had been parked temporarily in the disputed area from January to June 2004.  Even accepting the veracity of the Longview resident's testimony, given the mixed nature of the use of these properties—some seasonal, others year-round—Longview's argument that the use of the disputed area to store a vehicle for several months in early 2004 interrupted the continuity or destroyed the exclusivity of Pearl's use is unpersuasive.  The use was limited in time and occurred during the off-season and, in the circumstances presented here, did not interrupt the continuity of Pearl's possession and use. *See Dowley v. Morency*, 1999 ME 137, ¶ 23, 737 A.2d 1061 ("[A] landowner must perform some unequivocal act of ownership that interrupts the claimant's use and possession in order to prevent the ripening of an adverse claim to title." (quotation marks omitted)).

14

[¶25]   Generally, "an acquisition of title to property through adverse possession is limited to the area of the property that has been actually occupied." *Harvey v. Furrow*, 2014 ME 149, ¶ 7, 107 A.3d 604; *see also Harkins v. Fuller*, 652 A.2d 90, 92 (Me. 1995).  Although we are deferential "as to . . . what inferences may or may not be drawn from evidence or exhibits," *Lincoln v. Burbank*, 2016 ME 138, ¶ 59, 147 A.3d 1165, the determination of what property has been actually occupied is a question of fact that we review for clear error, *see Grondin v. Hanscom*, 2014 ME 148, ¶¶ 8, 13, 106 A.3d 1150.

[¶26]   Longview is correct that the description of the parcel conveyed by adverse possession in the court's August 24 amended final judgment differs from the description of the parcel conveyed in the June 28 final judgment, which provides:

> The court concludes that, through adverse possession, Pearl Inn Condominium Association has acquired title to the strip of land beginning at the backside of Pearl's external staircase and running northeasterly – with the same width as the staircase – to Pearl Avenue.

The record establishes that the "width of the staircase" is seven feet and the distance from the backside of the external staircase to Pearl Avenue is forty-three feet.  The August 24 amended final judgment provides:

> The court concludes that, through adverse possession, Pearl Inn Condominium Association has acquired title to the strip of land

> beginning at the backside of Pearl's external staircase and running northeasterly, *with a width of 10 feet, for a distance of 45 feet, to Pearl Avenue.*

(Emphasis added.)

[¶27]   There are three material differences between the June 28 final judgment and the August 24 amended final judgment (as well as the August 24 judgment and decree) with respect to the parcel conveyed by adverse possession.  First, the strip of land ultimately declared to have been adversely possessed is three feet wider than what the court initially found to have been adversely possessed.   Second, that strip is two feet longer, because the southwesterly ("backside") boundary established as "an extension and prolongation of the southwesterly side of the Pearl Inn Condominium building" is two feet beyond the back of the external staircase.  Third, placement of the southeasterly terminus of the extended backside boundary results in a conveyance of an additional three-foot wide patch of Longview's parking lot immediately adjacent to the beach side of the staircase.

[¶28]   As to the first of these differences, we conclude that the court did not err in determining that the area adversely possessed was three feet wider than what was described in its June 28 final judgment.  The record evidence supports the finding that the seven-foot width initially established was "too

16

small for effective parking" because, as the court found, it did not allow sufficient room for a vehicle's occupants to enter and exit a vehicle given how close a vehicle is to the Pearl building when parked in that area. Thus, it was reasonable for the court to infer actual use of an area wider than seven feet in order to reasonably accommodate the parking of a noncommercial vehicle. Also, a width of ten feet conformed with the municipality's standard dimension of a parking space.[8] Drawing the boundary line from the outside front corner of the staircase to Pearl Avenue, therefore, did not accurately reflect the actual area that the Pearl residents had used for parking for nearly thirty years.

[¶29] With respect to the second and third differences noted above, however, the record evidence does not support that Pearl residents have actually used the additional area falling within the description proposed by Pearl and accepted by the court. Extending the southwesterly (backside) boundary in a southeasterly direction (toward the beach) to the beginning point on the face of the earth described in the final amended judgment's metes-

---

[8] The record suggests that the standard dimension of a parking space, according to Old Orchard Beach municipal regulations, is ten feet by twenty feet. As noted, the record does not indicate the length of the disputed area—in other words, the distance between Pearl Avenue and the front side of the external staircase—although it would appear to exceed twenty feet. There is evidence in the record suggesting that vehicles were parked closer to the external staircase than the road. Even if a parked vehicle would not occupy the entirety of the disputed area, the Pearl residents necessarily would have used that unoccupied portion for access.

and-bounds description, and then from that point running the line in a northeasterly direction toward Pearl Avenue along a course ten feet from the Pearl building to Longview's Pearl Avenue boundary creates two small parcels of land—one between the southwesterly (backside) boundary and the back edge of the external staircase and the other between the southeasterly (beach side) boundary and the side of the external staircase—as to which there is no evidence of actual or continuous use by Pearl residents. These areas are outlined in bold in Figure 3.



*Figure 3*

[¶30]  We therefore vacate that portion of the August 24 amended final judgment (and judgment and decree) describing the boundaries on the face of the earth of the area adversely possessed because the descriptions include areas as to which the evidence does not support actual or continuous use by the Pearl residents.  *See Hennessy*, 2002 ME 76, ¶ 28, 796 A.2d 41 (remanding for clarification on the boundary because it was inconsistent with the referee's finding of adverse possession).  On remand, the metes-and-bounds description should be revised to include only (1) the portion of the external staircase that sits on Longview's property, as to which there is no dispute, and (2) the narrow, rectangular strip of Longview's property bounded (i) on the southeast by a line parallel to and ten feet from the side of the Pearl building; (ii) on the southwest by a line across the bottom, front edge of the portion of the external staircase on Longview's property and extending southeasterly for a distance of three feet to line (i);  (iii) on the northwest by the deeded boundary between Pearl's and Longview's properties running parallel to the side of the Pearl building; and (iv) on the northeast by that portion of Longview's northeasterly boundary running along Pearl Avenue between lines (i) and (iii).

The entry is:

> Judgment affirmed in part and vacated in part.
> Remanded for further proceedings consistent
> with this opinion.

---

Thomas R. Miscio, Esq., Bergen & Parkinson, LLC, Saco, for appellant Longview Hotel Condominium Association

Corey S. Hadley, Esq., Weinstein, Lovell & Ordway, P.A., Saco, for appellee Pearl Inn Condominium Association

York County Superior Court docket number RE-2021-78
FOR CLERK REFERENCE ONLY