2012 ME 97

**Conrad S. BROOKS et al.**

v.

**Barbara R. CARSON.**

Supreme Judicial Court of Maine.

Argued: June 13, 2012.

Decided: July 19, 2012.

Chris Neagle, Esq. (orally), Troubh Heisler, Portland, for appellant Barbara Carson.

William H. Dale, Esq. (orally), and Mark A. Bower, Esq., Jensen Baird Gardner & Henry, Portland, for appellees Conrad Brooks, Kathleen Brooks, Vivian Thompson, Albert Desmond, Christine Desmond, Robert Tebbetts, Charlene Tebbetts, Le-

land Oliver, Jacqueline Oliver, and Popham Holdings, LLC.

Chris Neagle, Esq., argued, for appellant Barbara Carson.

William H. Dale, Esq., argued, for appellees Conrad Brooks, Kathleen Brooks, Vivian Thompson, Albert Desmond, Christine Desmond, Robert Tebbetts, Charlene Tebbetts, Leland Oliver, Jacqueline Oliver, and Popham Holdings, LLC.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶1] In this appeal we must decide whether the notice provision, 23 M.R.S. § 3033(1) (2011), of the Paper Streets Act, 23 M.R.S. §§ 3027, 3031–3035 (2011); 33 M.R.S. §§ 460, 469–A (2011),[1] that permits a person to assert ownership of all or a portion of a paper street, and preclude others from using the owned portion of the paper street, requires that the person asserting the claim notify all record lot owners in the subdivision that includes the paper street, or only those lot owners that the person asserting ownership of the paper street seeks to exclude from the paper street property. Because we conclude that notice to all subdivision lot owners is required, we affirm that portion of the trial court's judgment addressing the notice issue.

[¶2] Barbara R. Carson appeals from a judgment entered in the Superior Court (Sagadahoc County, *Horton, J.*) following a jury-waived trial. The court granted judgment to the plaintiffs, Conrad S. Brooks and the other owners of six properties abutting or near to Carson's property (the Neighbors). The Neighbors had brought an action against Carson pursuant to the Paper Streets Act, seeking a determination that they have a continuing right to use a portion of a paper street known as Gosnold Street, which bisects Carson's property, in order to access another paper street, Sea Street, that provides access to the Atlantic Ocean.

[¶3] Carson argues on appeal that the court erred when it (1) concluded that, pursuant to 23 M.R.S. § 3033(1), Carson was required to send notice to the record owners of all lots in the subdivision plan in order to validate her claim to ownership; (2) made several findings of fact that are unsupported by record evidence; (3) determined that if any of the Neighbors could prove that their loss of the use of the relevant portion of the paper street to access the ocean was unreasonable, then all of the Neighbors should prevail; and (4) determined that the Neighbors proved that the loss of the use of the relevant portion of the paper street would unreasonably limit access to the ocean, even though some Neighbors presented no evidence of their personal use of or need to use the paper street.

1. The Paper Streets Act at 33 M.R.S. § 469–A (2010), applicable to this case when presented to the trial court, has been amended by P.L. 2011, ch. 312, §§ 1–3 (effective Sept. 28, 2011). The amendment does not affect the issues addressed in this appeal.

   A "paper street" is defined as "a thoroughfare that appears on plats, subdivision maps, and other publicly filed documents, but that has not been completed or opened for public use." *Fournier v. Elliott*, 2009 ME 25, ¶ 15,

966 A.2d 410. Paper streets constitute "proposed, unaccepted ways" within the meaning of the Paper Streets Act, which term includes paper streets and both constructed and unconstructed roads. *Id.* ¶¶ 15–20. Sea Street, to be addressed in this opinion, appears to be an example of a proposed, unaccepted way that has been subject to some construction and improvement and use by subdivision residents.

## I.  CASE HISTORY

[¶ 4]  Six sets of Neighbors own twenty lots in the Popham Beach Estates, Inc., subdivision located in the Popham Beach area of Phippsburg.  The lots appear on a recorded 1922 subdivision plan that includes hundreds of small lots.  The subdivision is bordered to the south by the Atlantic Ocean and to the east by the Kennebec River.

[¶ 5]  The 1922 Plan shows three proposed parallel private streets—Sea Street;[2] Seguin Street, and Surf Street—that run north to south toward the ocean.  These proposed streets are intersected by two proposed streets that run east to west toward the Kennebec River and parallel to the ocean—Gosnold Street and Beach Avenue.  Beach Avenue runs above Popham Beach along the ocean, so Neighbors would have to travel south on Sea, Seguin, or Surf streets to get to it.  None of these streets have been accepted as a public way by the town of Phippsburg and, as such, all are "proposed, unaccepted ways" pursuant to the Paper Streets Act, 23 M.R.S. §§ 3031–3035; 33 M.R.S. §§ 460(1), 469–A. Only Sea Street, containing a wide gravel road, and Beach Avenue, a flat, partially established route through dune grass, allow for unobstructed travel within the confines of the streets as they exist on the Plan.

[¶ 6]  Carson purchased a parcel of land consisting of four subdivision lots and constructed a home in 2002.  On the Plan, Gosnold Street runs through the middle of Carson's parcel.  Carson built her home next to and facing the bounds of Gosnold Street and positioned her driveway so that it crosses Gosnold Street.  The approximately 200–foot portion of Gosnold Street at issue in this case is overgrown and a fence blocks easy passage over that por-

tion.  The parties agree that the Neighbors have an interest in the portion of Gosnold Street that bisects Carson's parcel.  *See generally* 23 M.R.S. § 3032–3033; *Hartwell v. Stanley*, 2002 ME 29, ¶¶ 5–7, 790 A.2d 607.

[¶ 7]  The Neighbors' properties are clustered together around the intersection of Seguin and Gosnold streets near Carson's parcel.  Each of the Neighbors has the same options for accessing the ocean, with minor variations in the distance from a particular Neighbor's lot to each route of ocean access.  The Neighbors have accessed the ocean to varying degrees and have used different routes to do so.  Few of the Neighbors have actually accessed the ocean via Carson's portion of Gosnold Street, typically relying instead on permissive travel over other private property.

[¶ 8]  The Neighbors, and other subdivision owners, have three legal rights of access to the ocean.  First, the Neighbors may travel east on Gosnold Street to Sea Street, then take Sea Street south to the ocean.  Sea Street contains a flat, wide gravel path or road that exists on the earth completely within the bounds of the street as it exists on the Plan.

[¶ 9]  Second, the Neighbors may travel south on Seguin Street, which is the most direct route to the ocean, attempting to stay within the bounds of Seguin Street as it exists on the Plan. Ocean access by Seguin Street is not well developed.  If one stays within the bounds of Seguin Street, one must walk single-file over hilly, wooded, and uneven terrain with a "large drop-off."

[¶ 10]  Third, the Neighbors may travel west, if necessary, on Gosnold Street to Surf Street and travel south on Surf Street to the ocean.  However, travel on Surf Street may not be possible without leaving

2.  What is now referred to as Sea Street was originally referred to as Popham Avenue.

the bounds of that paper street unless there is significant clearing and access improvements.

[¶ 11] In actuality, when the Neighbors access the ocean by traveling south on either Seguin Street or Surf Street, they have historically traveled only partially within the bounds of those paper streets; the historical pathways or gravel roads along these two routes meander out of the bounds of those two paper streets and cross private property. Occasionally lot owners have asked the Neighbors not to enter their property when accessing the beach via Seguin Street, as that street appears on the face of the earth, but no one has prevented the Neighbors from doing so, even though that way meanders onto private property. When the Neighbors have accessed Sea Street or Surf Street, they have typically done so by crossing over private property with permission from the lot owners.

[¶ 12] In 2008, Carson attempted to acquire full ownership of the portion of Gosnold Street that bisects her property and to extinguish, pursuant to the Paper Streets Act, the rights of other subdivision lot owners to access that portion of Gosnold Street. In an attempt to accomplish this objective, Carson recorded and sent notice to sixteen sets of subdivision lot owners (owning significantly fewer than all of the subdivision lots), including all of the Neighbors, pursuant to 23 M.R.S. § 3033(1). Carson did not provide notice to the record owners of the many other lots in the subdivision.

[¶ 13] In opposition to Carson's notice, the Neighbors timely recorded statements of adverse interest. *See* 23 M.R.S. § 3033(2). They also filed a complaint in the Superior Court, seeking a declaration that they have and shall continue to have a right to use and travel over Carson's portion of Gosnold Street. By agreement of the parties, the court and counsel personally viewed the lots and paper streets at issue before holding a two-day jury-waived trial in August 2011.

[¶ 14] On August 23, 2011, the court entered a detailed judgment in favor of the Neighbors. The court first concluded as a matter of law that the notice that Carson provided to the Neighbors was defective and void because she failed to provide that notice to all record owners of lots in the subdivision as required by 23 M.R.S. § 3033(1), as the court interpreted that statute. Although the court concluded that it could enter judgment in favor of the Neighbors on that legal ground alone, the court went on to reach the merits of the Neighbors' claims. Reaching the merits of the claims despite finding notice inadequate was an appropriate choice for the trial court. The facts had been fully litigated in trial and the judgment resolved all of the claims between the contending parties should the trial court's notice ruling, on appeal, be held not to preclude resolution of the action between the contending parties.

[¶ 15] Making numerous underlying findings, the court determined that Sea Street has historically been "among the most, if not the most, important means for" the Neighbors to access the ocean from their respective lots and that "the disputed portion of Gosnold Street is the [Neighbors'] only reasonable legal means of access to Sea Street, which is in turn their best legal means of access to the Atlantic Ocean." Accordingly, the court found that the Neighbors had met their burdens of proving by a preponderance of the evidence that their access to the ocean would be unreasonably limited if they were deprived of the use of the portion of Gosnold Street that crosses Carson's property.

[¶ 16] Carson then brought this appeal.

## II. LEGAL ANALYSIS

[¶ 17]  Title 23 M.R.S. § 3033(1) establishes the procedural prerequisites for a person to commence a proceeding to claim ownership of and the capacity to exclude others from a paper street.  It specifies:

> **1. Notice by person claiming ownership.**  Any person claiming to own a proposed, unaccepted way or portion of a proposed, unaccepted way deemed vacated under section 3032 may record, in the registry of deeds where the subdivision plan, to which the notice set forth in this subsection pertains, is recorded, a conformed copy of the notice set forth in this subsection, with an alphabetical listing of the names of the current record owners of lots on the subdivision plan to which the notice pertains and their mortgagees of record.  The person shall give notice of his claim to these current record owners and their mortgagees of record.  Within 20 days of recording of the notice, the person shall give this notice by mailing, by the United States postal service, postage prepaid, to the current record owners and mortgagees, a copy of the notice set forth below:
>
> . . . .

[¶ 18]  Carson contends that the reference in section 3033(1) to "the names of the current record owners of lots on the subdivision plan to which the notice pertains and their mortgagees of record" allows her to select those record owners whom she wishes to notify.  She argues that the court erred when it concluded that the notice Carson provided to the selected lot owners, pursuant to section 3033(1), was void because she did not provide it to owners of all of the lots shown on the plan.  She argues more specifically that most of the lots are not near her property, their owners would not use her property to access the ocean, and it would be prohibitively costly to require her to provide such notice to the potentially hundreds of lot owners based on the subdivision indicated in the 1922 plan.  Carson also states that she did not intend to eliminate all easement rights over her portion of Gosnold Street, and that she intended only to stop the neighbors of the lots who received notice from using the way.

[¶ 19]  We review a trial court's interpretation of a statute de novo by analyzing the statute's plain language to effect the Legislature's intent.  *Russell v. ExpressJet Airlines, Inc.*, 2011 ME 123, ¶ 16, 32 A.3d 1030.  Even in a plain language reading of a statute, we will consider the provision at issue in the context of the entire relevant statutory scheme.  *Adoption of Tobias D.*, 2012 ME 45, ¶ 15, 40 A.3d 990.  We also recognize that a statute is not ambiguous simply because a court must exercise its function to interpret the statute's plain meaning.  *See State v. Aboda*, 2010 ME 125, ¶ 9, 8 A.3d 719.

[¶ 20]  We have not previously addressed directly whether section 3033(1) requires that notice be provided to all recorded owners of lots in a subdivision or to only those owners of lots whom the party invoking the section 3033(1) process seeks to exclude from use of a paper street.[3]

---

**3.**  We have described 23 M.R.S. § 3033 as:

invit[ing] any person claiming to own a way vacated under section 3032 to record in the registry of deeds a notice whose form and content is stipulated in the statute.  Notice also must be given to the relevant current record owners and their mortgages.  Those who receive notice and who claim a private right in the vacated way will forever be barred from maintaining an action at law or equity regarding that right unless they file in the registry of deeds where the relevant subdivision plan was recorded a statement under oath "specifying the nature, basis and extent of [their] claimed

[¶ 21] Carson's interpretation of section 3033(1), to invite notice to and preclusion of only selected lot owners with whom an applicant is having disagreements, presents two significant difficulties. First, it would invite repetitive litigation to redecide, perhaps dozens of times and with conflicting results, ownership of and access to a single small section of a paper street. Second, it would create confusion and uncertainty for all subdivision owners, and potential buyers searching title, regarding all subdivision owners' rights to use the identified section of a paper street. The law cannot be read to invite such confusion, uncertainty, and repetitive litigation.

[¶ 22] Carson argues that the notice requirement, if interpreted to apply to all subdivision lot owners, imposes too great a financial burden on an owner who wishes to exclude just a few neighbors in a large subdivision. However, section 3033(1) applies to all subdivisions, regardless of size, and the need for all owners to be notified of an effort to limit access to the ocean or the river through part of a subdivision may actually grow as the subdivision gets larger. Most owners may have significant interest in use of ways that provide access to the ocean and the river.

[¶ 23] Reading section 3033(1) in context, there is no ambiguity that the phrase "to which the notice pertains," references the term "subdivision plan" that immediately precedes the phrase and requires notice to all lot owners of record in the identified subdivision.

[¶ 24] The purpose of the Paper Streets Act, enacted in 1987, was to clarify title to "old, proposed, unaccepted streets shown on subdivision plans," L.D. 1776, Statement of Fact (113th Legis.1987), "and to eliminate the possibility of ancient claims," *Fournier v. Elliott*, 2009 ME 25, ¶ 14, 966 A.2d 410; *see also Driscoll v. Mains*, 2005 ME 52, ¶ 4, 870 A.2d 124. The legislative history goes on to provide the following:

> Title 23, section 3033 permits persons claiming to own a proposed, unaccepted way considered vacated to initiate a procedure that will confirm their ownership. This procedure involves recording, within a set time period, a notice of their claim in the registry of deeds and sending this notice to all current owners of lots shown on the pertinent subdivision plan.[4]

L.D. 1776, Statement of Fact (113th Legis.1987). Although we need not consult legislative history to interpret unambiguous statutory language, this statement confirms the conclusion that a person claiming ownership must name all lot owners in the notice and send the notice to all lot owners in order to initiate a valid claim. *See generally* 23 M.R.S. § 3035 (stating that sections 3031 to 3034 "shall be liberally construed to [e]ffect the legislative purpose of enhancing the merits of title to

---

interest" within one year from the date of the recording of the notice.
*Glidden v. Belden*, 684 A.2d 1306, 1315 (Me. 1996) (internal citations omitted). Our decision did not identify the "relevant" current record owners.

4. The remaining portion of this paragraph states:

> Persons who receive the notice then have a set time within which to institute a court action to assert rights they claim in the way to which the notice pertains. Failure to

bring this action within the established time period causes these claims of rights to be barred. In determining whether or not to grant the claimed rights, the court must determine that the claimant has an interest in the way and must protect the claimant's access to public ways, public bodies of water and common land or facilities within the subdivision.

L.D. 1776, Statement of Fact (113th Legis.1987).

land by eliminating the possibility of ancient claims to proposed, unaccepted, unconstructed ways that are outstanding on the record but unclaimed").

[¶ 25] Reading section 3033(1) individually and in context with surrounding provisions, and the legislative purpose underlying the Paper Streets Act, it is evident that the law requires that a person claiming to own a proposed, unaccepted way, or portion thereof, may record notice, but upon electing to do so, the notice must contain "an alphabetical listing of the names of the current record owners," and their mortgagees of record, of all of the lots in the subdivision plan. The person must then send that notice to each of those current lot owners and their mortgagees.

[¶ 26] The Superior Court correctly interpreted and applied the Paper Streets Act when it determined that Carson's failure to name the owners of all subdivision lots in her notice and to send that notice to all lot owners caused her notice to be defective and void, even with respect to the lot owners to whom she did send notice.

[¶ 27] Because the notice that led to the action that resulted in this appeal was defective and is void, we need not address the other issues raised in this appeal. We leave for another day any question of whether collateral estoppel or any other doctrine of issue preclusion might prevent relitigation, as between Carson and the Neighbors, of the substantive fact issues resolved by the trial court.

The entry is:

Judgment addressing the notice issue affirmed.