MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 130
Docket:      Cum-18-447
Argued:      May 16, 2019
Decided:     August 8, 2019
Revised:     September 20, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

LESLIE S. FISSMER et al.

v.

DAVID D. SMITH et al.

GORMAN, J.

[¶1]  David D. Smith, Cunner Lane, LLC, (collectively, Smith) and Cunner Lane II, LLC, (Cunner Lane II) appeal from a judgment entered by the Superior Court (Cumberland County, *L. Walker, J.*) after a jury-waived trial on a variety of claims and counterclaims concerning the use and ownership of certain property in Cape Elizabeth.  Leslie S. Fissmer,[1] Karen A.B. Burke, William A. Burke, Patricia M. Gramse, Richard R. Gramse (collectively, the Cunner Lane Owners), and Robert E. Siegel cross-appeal from the same judgment with regard to the court's determination declaring Cunner Lane II the owner of

---

[1]  Individually and as trustee of the Leslie S. Fissmer Revocable Trust.  Although the Trust owns the property at issue in this appeal, and although both Fissmer and the Trust are parties to the appeal, we will refer to these parties collectively as "Fissmer."

2

certain property as shown on a 1929 subdivision plan. We affirm the judgment in part and vacate in part. In addition, because a judgment declaring ownership by adverse possession must clearly describe the boundary lines of the adversely possessed property so as to sufficiently establish those lines on the face of the earth, we remand for further proceedings.

## I. BACKGROUND

[¶2] The parties to this appeal are neighbors in Cape Elizabeth with land abutting Cunner Lane,[2] a paved private road that provides access to the neighborhood. An earlier dispute between Smith and Fissmer arose in 2015 when Smith attempted to build a house on his property. *See generally Fissmer v. Town of Cape Elizabeth*, 2017 ME 195, 170 A.3d 797. That dispute was resolved in 2017 but, in August of 2016, while it was still pending, Fissmer initiated an action against Smith in the Superior Court, seeking, inter alia, a declaratory judgment that Fissmer holds title by adverse possession to portions of Smith's property.[3] In November of 2016, Fissmer's neighbors—the Gramses,

---

[2] Siegel's property does not directly abut Cunner Lane, but it can be accessed only by way of Cunner Lane. Siegel, in the end, gains nothing from this litigation, *see infra* ¶ 33, and thus, although he is a party to the appeal, we do not consider him to be one of the Cunner Lane Owners.

[3] The disputed property concerns parts of two parcels: one owned by Smith and the other by Cunner Lane, LLC. Smith is the managing member of Cunner Lane, LLC, a Maine limited liability company.

the Burkes, and Siegel—joined her complaint as plaintiffs. Smith counterclaimed, seeking, inter alia, a declaratory judgment as to the location of Cunner Lane.

[¶3] In September of 2017, Cunner Lane II, a Maine limited liability company wholly owned by Smith, filed a separate complaint against the Cunner Lane Owners and Siegel, seeking a declaratory judgment that it owned private roads in the neighborhood—Cunner Lane, Brook Road, and Sunrise Drive—as well as certain five-foot-wide strips of land that run alongside segments of those roads. The Cunner Lane Owners and Siegel then filed a complaint against Cunner Lane II, seeking a declaratory judgment that they hold title by adverse possession to certain property allegedly owned by Cunner Lane II. In November of 2017, the court consolidated the three actions.

[¶4] After a jury-waived trial, the court considered the parties' claims, including their assertions of title acquired through the Paper Streets Act (PSA), 23 M.R.S. §§ 3027, 3031-3035 (2018); 33 M.R.S. §§ 460, 469-A (2018), and adverse possession. In its judgment dated October 11, 2018, the trial court made the factual findings referred to in this opinion, all of which are supported by competent record evidence. *See Dupuis v. Ellingwood*, 2017 ME 132, ¶ 3, 166 A.3d 112. As we explain in the discussion section below, the court, however,

4

made some errors in its application of the PSA to these facts, and because of this, additional litigation may be required. *See infra* ¶¶ 22-38. In addition, the judgment contains no legal descriptions of the boundaries it established.

A.      Facts Relevant to the Paper Streets Act

[¶5] Cunner Lane, as it now exists, is located between Smith's lot and the Cunner Lane Owners' lots. A 1929 subdivision plan (the 1929 Plan), created for and showing the property of the Harry E. Baker Company (HEB), designated a twenty-foot-wide corridor as "Cunner Lane." Provided here for illustrative purposes only, *Figure 1* below depicts the relevant features of the 1929 Plan.



*Figure 1.* Brook Road and Sunrise Drive appear but are unnamed on the original 1929 Plan. The names are added here for ease of reference. Brook Road and Sunrise Drive run generally east to west.

6

The Cunner Lane Owners' original lots are all located within the boundaries of the subdivision contemplated by the 1929 Plan.[4]  Smith's property, although shown on the 1929 Plan, is not a part of the contemplated subdivision.

[¶6]  Additionally, the 1929 Plan depicted, but did not name, portions of two proposed roads—also twenty feet wide—turning off of Cunner Lane.  The proposed road between Lot 1 and Lily Pond Lot on the 1929 Plan encompasses what is now a private road known as Brook Road.  The proposed road abutting Lot 14 to the south is now brush and a grass foot path, but the parties refer to it as Sunrise Drive, as do we.

1.    The Fissmer Lot

[¶7]  Fissmer's lot is the southernmost of the Cunner Lane Owners' lots and is designated as Lot 14 on the 1929 Plan.  Fissmer's source deed granted title to the lot from HEB to Carroll Chaplin on July 18, 1929.  Although the deed also granted "the right of way as now travelled along the easterly side of [the] lot . . . and over [the] proposed roads on the easterly and southerly side [Cunner Lane and Sunrise Drive, respectively] of [the] lot," this conveyance occurred

---

[4]  These "original lots" are only those lots depicted on the 1929 Plan and do not include any additional lots to the southwest that the Cunner Lane Owners may now own.

The 1929 Plan was recorded in the Cumberland County Registry of Deeds on August 31, 1929, at Book 19, Page 5.

before the recording of the 1929 Plan.[5] In 1942, Chaplin conveyed back to HEB a "strip of land five feet in width" at the edge of the property abutting Cunner Lane and Sunrise Drive as delineated on the 1929 Plan, "[t]he purpose of this conveyance being that said strip of land may be included in and made a part of said Cunner Lane and of said proposed road [Sunrise Drive], thereby increasing the width thereof to twenty-five feet." Despite this deed reference, the five-foot-wide strip was not included on the recorded 1929 Plan as part of the proposed ways, and no amended plan was ever recorded. Chaplin did reserve a right-of-way over the five-foot-wide strip.

[¶8] A 1985 deed conveyed this lot and the rights-of-way to Robert and Leslie Fissmer. In 2008, Leslie Fissmer deeded the lot and the rights-of-way as conveyed in the original source deed to herself as trustee of the Leslie S. Fissmer Revocable Trust.

2. The Burke Lot

[¶9] The Burkes' lot is located between the Fissmer lot and Brook Road and is designated as Lot 1 on the 1929 Plan. Their source deed conveyed their

---

[5] Given the date of Fissmer's source deed, there is an argument to be made that, even without the five-foot-wide-strip "issue," *see infra* ¶¶ 23-24, 29-31, Fissmer's lot would not benefit from the PSA. *See* 33 M.R.S. § 469-A(1) (2018). For purposes of this opinion, however, we will treat Fissmer's lot in precisely the same way that we treat the Burkes' lot.

lot from HEB to Thomas Smiley in 1931. This deed also granted rights-of-way "over said road as now travelled along the easterly side of said lot [Cunner Lane] . . . and over said proposed road on the northerly side of said lot [Brook Road]." In 1932, Smiley deeded back to HEB a "strip of land five feet in width" at the edge of the property abutting "Cunner Lane as delineated" on the 1929 Plan, "the purpose of this conveyance being that said strip of land may be included in and made a part of said Cunner Lane." This five-foot-wide strip was not included as part of Cunner Lane on the recorded 1929 Plan, and no amended plan depicting Cunner Lane as a twenty-five-foot-wide way was ever recorded. Smiley did reserve a right-of-way over the five-foot-wide strip. In 2005, the lot and all rights-of-way were deeded to William Burke. On April 11, 2009, William Burke conveyed the lot and the rights-of-way to Karen Burke.

3.    The Gramse Lot

[¶10]  The Gramses live on what was designated as the "Lily Pond Lot" on the 1929 Plan, to the north of Brook Road and the Burkes. Their source deed conveyed the lot from HEB to Marcia Quimby in 1933; the deed excepted and reserved title to a five-foot-wide strip abutting Cunner Lane as depicted on the 1929 Plan but did include rights-of-way over Cunner Lane and the five-foot-wide strip. A 1988 deed conveyed the lot, again excepting the

five-foot-wide strip, to the Gramses, along with rights-of-way to the twenty-foot-wide corridor and the five-foot-wide strip.

### 4. The Siegel Lot

[¶11]  The trial court made limited factual findings as to Siegel's lot; Siegel purchased the property in 1972, has lived there full-time ever since, and has walked along Cunner Lane almost daily while living there.[6]

### 5. Smith's Property

[¶12]  With Cunner Lane to the west and the Atlantic Ocean to the east, Smith's original lot—as deeded to him in 1998—is now two lots.  In February of 2010, Smith conveyed a portion of his original lot to Cunner Lane, LLC; Smith retained the remaining portion of his parcel.  The original lot's source deed conveyed the property from Albert F. Hannaford to "The Venerable Cunner Association and Propeller Club" in 1920 and granted a right-of-way "over the private road as now located . . . adjoining said land hereby conveyed on the westerly and northwesterly lines thereof."  Although the original lot is not a part of the 1929 subdivision, the lot is marked as "The Venerable Cunner Asso. and Propeller Club" on the 1929 Plan.

---

[6]  Siegel's property abuts Brook Road and is located to the west of the Burkes' lot; Siegel's lot is not depicted on the 1929 Plan and, as mentioned above, does not abut Cunner Lane.  This information is discernable from the record and provided for context.

10

[¶13]  In May of 2017, HEB conveyed to Cunner Lane II title to Cunner Lane, Sunrise Drive, and Brook Road, all as depicted on the 1929 Plan, as well as title to the five-foot-wide strips abutting certain segments of these roads.

B.    Facts Relevant to Adverse Possession

[¶14]  In 1998, Smith commissioned a survey of his property.  That survey indicated that large sections of the twenty-foot-wide corridor labeled Cunner Lane on the 1929 Plan were actually located several feet west and northwest of the present-day Cunner Lane—placing part of the existing road on Smith's property and part of the twenty-foot-wide corridor on the Fissmer, Burke, and Gramse lots.  Sometime after that survey was completed, Smith paved Cunner Lane where it then existed on the earth.[7]

[¶15]  The disputed property, for purposes of the adverse possession claims, does not include the paved way, but does include portions of the twenty-foot-wide corridor designated as Cunner Lane on the 1929 Plan, as well as the five-foot-wide strips of land located between that twenty-foot-wide

---

[7]  Before trial, the parties stipulated that the Cunner Lane Owners and Siegel have a prescriptive easement appurtenant to the portions of Cunner Lane, as it now exists, where it encroaches on Smith's property.

corridor and the Fissmer, Burke, and Gramse lots as deeded.[8] Provided here for

illustrative purposes only, *Figure 2* below depicts the disputed property.

---

[8] Fissmer's adverse possession claim also includes an apple tree and a small area of or near her driveway that appear to encroach on portions of Smith's lot.

12



*Figure 2.* The background for this illustration comes from a 2016 land survey commissioned by Smith.

Referring to the criteria set out in our cases—twenty years of possession and use of another's property that was actual, open, visible, notorious, hostile, under a claim of right, continuous, and exclusive—the trial court made scores of factual findings concerning the Cunner Lane Owners' use of their respective properties as lawns and gardens. *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234. Each finding is supported in the record. *See Dupuis*, 2017 ME 132, ¶ 3, 166 A.3d 112.

C. The Trial Court's Conclusions

[¶16] After a thorough review of the evidence presented, the trial court ruled on each of the claims. The court ultimately concluded that Cunner Lane II holds title, in fee simple, to the twenty-foot-wide corridor designated as Cunner Lane on the 1929 Plan, as well as to the five-foot-wide strips of land directly to the north and west of that corridor, but also concluded that the Cunner Lane Owners own the disputed property up to the paved edge of present-day Cunner Lane by adverse possession. As discussed below, we affirm this portion of the court's decision.

[¶17] In other parts of its decision, however, the court determined that Cunner Lane II has no interest in Brook Road or Sunrise Drive. Instead, the court concluded that Siegel, the Burkes, and the Gramses own, in fee simple, to

the centerline of Brook Road where it abuts their properties and that Fissmer owns the "entire fee under Sunrise Drive." These portions of the decision must be vacated, at least in part.

[¶18] No party moved for additional findings of fact after the court entered the judgment. Smith and Cunner Lane II filed a timely appeal; the Cunner Lane Owners and Siegel filed a timely cross-appeal. 14 M.R.S. § 1851 (2018); M.R. App. P. 2B(c)(1), 2C(a)(2). We discuss the competing claims below, starting with those brought under the Paper Streets Act.

## II. DISCUSSION

### A. Paper Streets Act

[¶19] The PSA was enacted in 1987 "to clarify title to old, proposed, unaccepted streets shown on subdivision plans, and to eliminate the possibility of ancient claims." *Tisdale v. Buch*, 2013 ME 95, ¶ 9, 81 A.3d 377 (quotation marks omitted); *see also* 33 M.R.S. § 469-A(8). "In particular, 33 M.R.S. § 469-A was created to resolve ownership disputes regarding roads and streets laid out on subdivision plans where the original owner did not reserve title in the roads and where the roads have never been accepted by a town." *Tisdale*, 2013 ME 95, ¶ 9, 81 A.3d 377 (quotation marks omitted).

[¶20]  Pursuant to section 469-A(1),

> [a]ny conveyance made before September 29, 1987 that conveyed land abutting upon a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds is deemed to have conveyed all of the grantor's interest in the portion of the way that abuts the land conveyed, unless the grantor expressly reserved the grantor's title to the way by a specific reference to this reservation in the conveyance of the land.

33 M.R.S. § 469-A(1).  Generally, "[i]f the grantor or his successors fail to reserve title as set forth in the statute," and the proposed, unaccepted way is bounded on both sides by land included in the subdivision, then an abutting landowner "is deemed to own to the center line of the portion of the way abutting his or her property."  *Tisdale*, 2013 ME 95, ¶ 9, 81 A.3d 377; *see also* 33 M.R.S. § 469-A(6).  If the grantor fails to reserve title, and the proposed, unaccepted way "is bounded on the opposite side by land that is not included in the subdivision," then the abutting landowner owns not just to the centerline but the entire width of the proposed, unaccepted way abutting his or her property. 33 M.R.S. § 469-A(6-A).

[¶21]  Although the term "proposed, unaccepted way" is not defined in the PSA, we have construed the term to include "roads, constructed or unconstructed, that are depicted on a subdivision plan recorded in the registry of deeds and that are proposed to a municipality for acceptance but not yet

accepted by the municipality."[9] *Fournier v. Elliott*, 2009 ME 25, ¶ 20, 966 A.2d 410 (quotation marks omitted); *see also Tisdale*, 2013 ME 95, ¶¶ 10-11, 81 A.3d 377.

    1.    Cunner Lane

[¶22]  The Cunner Lane Owners argue that section 469-A of the PSA conveys ownership of the twenty-foot-wide corridor and the five-foot-wide strips to them and that the court erred in concluding otherwise. We review the trial court's factual findings for clear error, *Zablotny v. State Bd. of Nursing*, 2017 ME 29, ¶ 18, 156 A.3d 126, and its interpretation of section 469-A of the PSA and its application of that section to the facts de novo, *Brooks v. Carson*, 2012 ME 97, ¶ 19, 48 A.3d 224. Through this de novo review, we analyze "the statute's plain language to effect the Legislature's intent." *Id.*

    a.    The Fissmer and Burke Lots

[¶23]  With respect to the Fissmer and Burke lots, the original source deeds did convey land that abutted the twenty-foot-wide corridor identified as Cunner Lane on the 1929 Plan. *See supra* n.5. Both original grantees, however,

---

[9] As a preliminary matter, the parties agree, and the trial court implicitly found, that Cunner Lane, Brook Road, and Sunrise Drive each qualifies as a "proposed, unaccepted way" for the purposes of 33 M.R.S. § 469-A (2018). *See Fournier v. Elliott*, 2009 ME 25, ¶ 20, 966 A.2d 410 (quotation marks omitted).

conveyed back to HEB the five-foot-wide strips of land at the edge of their respective properties that abutted the twenty-foot-wide corridor. Although these deeds of reconveyance explicitly stated that the five-foot strips were meant to widen the proposed Cunner Lane to twenty-five feet, the trial court found no evidence that Cunner Lane was ever widened, and more importantly, it determined that HEB never submitted a new subdivision plan depicting Cunner Lane as a twenty-five-foot-wide proposed way. *See* 33 M.R.S. § 469-A(1).

[¶24] The trial court explicitly found that the five-foot-wide strips are *not* part of a "proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds."[10] *See* 33 M.R.S. § 469-A(1). Because neither Fissmer nor the Burkes hold title to land abutting the twenty-foot-wide corridor identified as Cunner Lane on the 1929 Plan—which *is* "a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds"—the court correctly determined that section 469-A does not apply to them. 33 M.R.S. § 469-A(1).

---

[10] The trial court's factual finding that the five-foot-wide strips are not a part of Cunner Lane as depicted on the 1929 Plan is supported by competent record evidence and is dispositive on the issue. Had the 1929 Plan been amended and then recorded in the registry of deeds—depicting Cunner Lane as a twenty-five-foot-wide way—the determination of fee ownership could be different in this case. *See* 33 M.R.S. § 469-A(1).

18

### b.    The Gramse Lot

[¶25]   With respect to the Gramse lot, the source deed—conveyed in 1933—expressly reserved title in HEB to,

> a strip of land five (5) feet in width extending from the southerly line of the lot . . . along each of the courses of the . . . lot on said road known as Cunner Lane . . . , said five-foot strip of land extending in its full width around the curve at the intersection of said Cunner Lane and said proposed street [Brook Road] and being measured at right angles to each of the courses of said lot along the line of said Cunner Lane as shown on said plan.

Because the Gramse lot was always separated from Cunner Lane by the five-foot-wide strip held in fee simple by HEB, it never "abut[ted]" Cunner Lane. 33 M.R.S. § 469-A(1).  The trial court determined—correctly—that the Gramses could not rely on section 469-A to claim ownership of the twenty-foot-wide corridor because their lot never abutted Cunner Lane as it was depicted on the 1929 Plan.[11]  *See* 33 M.R.S. § 469-A(1).

[¶26]   The Cunner Lane Owners argue that the court erred in these determinations and ask us to make findings as to the original grantor's—HEB's—intent.  As a preliminary matter, we do not make factual findings. *Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592.  Moreover, to the extent

---

[11]   The court also correctly construed section 469-A when it declined to declare the Gramses owners of the five-foot-wide strip.

that the Cunner Lane Owners ask us to examine their source deeds or reconveyances in order to determine HEB's overall intent with respect to each lot, we decline to do so. *See N. Sebago Shores, LLC v. Mazzaglia*, 2007 ME 81, ¶ 15, 926 A.2d 728 (stating the general rule that we will not look beyond the four corners of a deed to discern intent unless the intent of the grantor is ambiguous). Through reconveyance or reservation, HEB explicitly and unambiguously held title to the five-foot-wide strips that sit between the twenty-foot-wide corridor and the Fissmer, Burke, and Gramse lots.

        c.      Cunner Lane II is the Record Owner of the Twenty-Foot-Wide Corridor Identified as Cunner Lane on the 1929 Plan

[¶27] Although the Cunner Lane Owners' general assertion that the PSA was intended to eliminate "ancient claims" concerning land underlying "proposed, unaccepted ways" is correct, 33 M.R.S. § 469-A(8); *Tisdale*, 2013 ME 95, ¶ 9, 81 A.3d 377, their request that the PSA be "liberally construed" is better understood as a request for us to apply a series of exceptions to section 469-A that would effectively rewrite the current statute; granting such a request would be inappropriate. *See Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Assoc.*, 459 A.2d 166, 171 (Me. 1983) ("[I]t is not our role to rewrite the statute where its meaning is plain.").

[¶28] By reserving a five-foot-wide strip in a deed or reacquiring title to a strip through a conveyance, HEB held title in fee simple to the entire length of the five-foot-wide strips in dispute in this case. By virtue of its ownership of the five-foot-wide strips, which abutted the proposed, unaccepted way—the twenty-foot-wide corridor designated as Cunner Lane on the 1929 Plan—HEB became the owner of the twenty-foot-wide corridor pursuant to the PSA. *See* 33 M.R.S. § 469-A(6-A). In 2017, HEB conveyed title to the twenty-foot-wide corridor and the five-foot-wide strips to Cunner Lane II, and the trial court correctly determined that, through this conveyance, Cunner Lane II holds record title—in fee simple—to this property. Portions of this property, however, are owned by the Cunner Lane Owners through adverse possession. *See infra* ¶¶ 39-49.

2. Sunrise Drive

[¶29] Smith and Cunner Lane II argue that the trial court erred in its determination that "Fissmer owns the entire fee under Sunrise Drive." We agree. Fissmer's predecessor conveyed to HEB a five-foot-wide strip, not only along Cunner Lane, but also extending "around the circle at the southwesterly corner of said Cunner Lane and said proposed street [Sunrise Drive] . . . , maintaining a width of five feet measured at right angles to the northerly line

of said proposed road [Sunrise Drive], adjoining said road and extending to the westerly line of said land." In other words, the five-foot-wide strip extends the entire length of Sunrise Drive as it abuts Lot 14 on the 1929 Plan. The predecessor's reconveyance of the five-foot-wide strip along Sunrise Drive means that Fissmer does not own land "abutting" a proposed, unaccepted way, and therefore the court erred in declaring that, pursuant to the PSA, Fissmer owns any portion of Sunrise Drive.[12] *See* 33 M.R.S. §§ 469-A(1), (6-A); *Brooks*, 2012 ME 97, ¶ 19, 48 A.3d 224. To the contrary, due to its acquisition of land from HEB in May of 2017, Cunner Lane II is the record owner of Sunrise Drive as depicted on the 1929 Plan, and of the five-foot-wide strip that abuts it. *See* 33 M.R.S. § 469-A(6-A). Therefore, we must vacate that portion of the court's judgment declaring Fissmer the owner of the entire fee under Sunrise Drive.

[¶30] This opinion does not address ownership of any portion of Sunrise Drive not shown on the 1929 Plan. *See* 33 M.R.S. § 469-A(1).

[¶31] Furthermore, portions of the five-foot-wide strip abutting Sunrise Drive, as well as Sunrise Drive itself, may overlap with property that Fissmer claims and uses as part of her yard, especially with respect to the southernmost

---

[12] At oral argument, counsel for the Cunner Lane Owners conceded that there was no difference between Cunner Lane and Sunrise Drive with respect to the five-foot-wide strips.

edge of her property. We do not address whether Fissmer has acquired by adverse possession any portion of Sunrise Drive or the five-foot-wide strip running along that proposed road; no factual findings were made concerning Fissmer's use of this area. Finally, although Cunner Lane II is the title owner of the portion of Sunrise Drive that is depicted on the 1929 Plan and of the five-foot-wide strip abutting that road, Fissmer still maintains a right-of-way in common over Sunrise Drive and the five-foot-wide strip through certain deeds and conveyances.

### 3. Brook Road

[¶32] Smith and Cunner Lane II also argue that the trial court erred by declaring that Siegel, the Gramses, and the Burkes own to the centerline of Brook Road where it abuts their properties. Specifically, Smith asserts that (1) section 469-A of the PSA does not apply to Siegel's lot nor does it apply to portions of Brook Road not depicted on the 1929 Plan, and (2) a small portion of Brook Road where it intersects with Cunner Lane is owned by Cunner Lane II—not the Gramses and Burkes—pursuant to the deed it acquired from HEB in 2017. Again, we agree.

### a. The Siegel Lot

[¶33] Although the trial court made no findings about the location of Siegel's property nor did it find that Siegel's property was depicted on the 1929 Plan, it declared Siegel owner to the centerline of Brook Road where it abuts his property. As counsel for the Cunner Lane Owners conceded at oral argument, however, there is no competent evidence in the record to support the court's determination that, pursuant to section 469-A, Siegel holds title to a portion of Brook Road. *See Stickney*, 2001 ME 69, ¶ 13, 770 A.2d 592 (explaining that we will vacate a trial court's conclusions if no competent evidence exists in the record to support them). We therefore vacate this portion of the judgment.

### b. Burke and Gramse Lots

[¶34] As a preliminary matter, Smith and Cunner Lane II do not dispute that "section 469-A vests [the] Burke[s] and Gramse[s] with title to those portions of Brook Road delineated on the 1929 Plan that do not abut the five-foot strips." They assert, however, that over the years, the Burkes have acquired additional land abutting Brook Road that was not included in the 1929 Plan, and that, because of this, the court erred in declaring the Burkes owners of portions of Brook Road not depicted on the 1929 Plan. Additionally, Smith and Cunner Lane II contend that the court erred in declaring the Burkes and

24

Gramses owners of a small section of Brook Road where it meets Cunner Lane because the five-foot-wide strips "curve into Brook Road."  We agree.

[¶35]  Again, section 469-A applies only to land depicted on a subdivision plan.  *See* 33 M.R.S. § 469-A(1).  Brook Road, as it now exists, is longer and proportioned differently than the proposed road on the 1929 Plan.  The trial court's determination that the Burkes and Gramses own to the centerline of Brook Road "where it abuts their properties" is thus overbroad; by virtue of the PSA, the Burkes and Gramses own to the centerline of Brook Road—as depicted on the 1929 Plan—only where the road abuts their properties as they are depicted on the 1929 Plan as "Lot 1" and "Lily Pond Lot," respectively.  *See* 33 M.R.S. § 469-A(6).

[¶36]  Furthermore, the trial court's judgment did not address how the five-foot-wide strips affect the ownership of Brook Road where the road meets Cunner Lane.  As discussed above, the Gramse source deed reserved a five-foot-wide strip for HEB, and the Burkes' predecessor re-conveyed a five-foot-wide strip to HEB.  Thus, to the extent that these five-foot-wide strips curve off of Cunner Lane and run down either side of Brook Road,[13] the Burkes and the

---

[13]  The trial court made no factual findings as to how far these five-foot-wide strips curve down Brook Road with regard to either lot.

Gramses do not own property "abutting" that portion of Brook Road; counsel for the Cunner Lane Owners conceded as much at oral argument. *See* 33 M.R.S. § 469-A(1).

[¶37] Because HEB conveyed ownership of the five-foot-wide strips to Cunner Lane II in 2017, it necessarily follows that Cunner Lane II holds title to any segment of Brook Road, no matter how small, that is lined on either side by the five-foot-wide strips, pursuant to the PSA. *See* 33 M.R.S. § 469-A(6). To the extent, however, that the Burkes and Gramses have used portions of these five-foot-wide strips, or portions of Brook Road abutting these strips, as their lawns, then the five-foot-wide strips and those respective segments of Brook Road may be owned by the Burkes and Gramses through their adverse possession of this land. *See infra* ¶¶ 39-49.

[¶38] On remand, if the Burkes and Gramses wish to rely on the PSA to be declared owners of any portion of Brook Road as depicted on the 1929 Plan, they will have to establish (1) the extent of Brook Road as depicted on the 1929 Plan and (2) where the five-foot-wide strips end on Brook Road as depicted on the 1929 Plan. The location of their lawns in relation to Brook Road and the five-foot-wide strips will be relevant to any claims of ownership based on adverse possession.

26

B.    Adverse Possession

[¶39]   As mentioned above, the trial court concluded that although Cunner Lane II has title ownership of the twenty-foot corridor and the five-foot-wide strips, the Cunner Lane Owners "obtained fee simple title by adverse possession to the property abutting the western and northwestern edge of the paved road known as Cunner Lane." Smith and Cunner Lane II argue that the Cunner Lane Owners did not satisfy their burden of proving, by a preponderance of the evidence, adverse possession to the disputed land. Specifically, Smith and Cunner Lane II assert that the court erred in its determination because several of the Cunner Lane Owners' uses were permitted and not continuous for the twenty-year limitations period.

[¶40]   Adverse possession presents a mixed question of fact and law. *See, e.g.*, *Striefel v. Charles-Keyt-Leaman P'ship*, 1999 ME 111, ¶ 7, 733 A.2d 984. "Whether the necessary facts exist is for the trier of fact, but whether those facts constitute adverse possession is an issue of law." *Grondin v. Hanscom*, 2014 ME 148, ¶ 13, 106 A.3d 1150 (alterations omitted) (quotation marks omitted). We review a trial court's factual findings regarding adverse possession for clear error and will affirm those facts if they are supported by competent record

evidence. *Id.* We review questions of law de novo. *See, e.g.*, *D'Angelo v. McNutt*, 2005 ME 31, ¶ 6, 868 A.2d 239.

[¶41]  "A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period." *Weeks*, 2008 ME 120, ¶ 12, 955 A.2d 234.  As a general rule, Maine law "disfavors the transfer of land by adverse possession." *Striefel*, 1999 ME 111, ¶ 4, 733 A.2d 984.

[¶42]  "Actual possession means physical occupancy or control over property" and "is established when the evidence shows an actual use and enjoyment of the property that is in kind and degree the same as the use and enjoyment to be expected of the average owner of such property." *Harvey v. Furrow*, 2014 ME 149, ¶ 12, 107 A.3d 604 (quotation marks omitted).  "Hostile simply means that the possessor does not have the true owner's permission to be on the land and has nothing to do with demonstrating a heated controversy or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate." *Striefel*, 1999 ME 111, ¶ 13, 733 A.2d 984 (citations omitted) (quotation marks omitted).

[¶43] "Continuous means occurring without interruption, and, like actual possession and use, continuous possession and use requires only the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property." *Harvey*, 2014 ME 149, ¶ 16, 107 A.3d 604 (alteration omitted) (emphasis omitted) (quotation marks omitted). "Finally, a claimant must prove that its possession and use satisfied each of the aforementioned elements simultaneously for a period of at least twenty years." *Id.* ¶ 17 (alteration omitted) (quotation marks omitted).

[¶44] As the trial court found, the Cunner Lane Owners and their predecessors have used the disputed property as owners of front lawns would typically use such property: they mowed and watered their lawns; cared for plants, trees, and shrubs in the area; erected and kept mailboxes in the area; maintained flower beds; installed wooden posts; maintained driveways; erected and then removed a picket fence; installed an irrigation system; installed electric dog fences; placed four large rocks along the boundary of the paved area of Cunner Lane; recreated on the grass with their families; and generally used the land as if it were their own. *See id.* ¶ 12. None of the Cunner Lane Owners attempted to hide any of these uses and the community considered the disputed land as belonging to the Owners. We agree with the

trial court that the Cunner Lane Owners' use of the disputed area was thus actual, open, visible, and notorious.  *See Striefel*, 1999 ME 111, ¶¶ 9-11, 733 A.2d 984.

[¶45]  Smith and Cunner Lane II argue, however, that the Cunner Lane Owners' uses of the disputed property were not hostile because the Owners' uses were consistent with their easement rights.[14]  This argument is not persuasive.  The term "right-of-way" generally refers to "the right of a person to pass over the land of another person."  33 M.R.S. § 458(2)(A) (2018); *see also Easement*, Black's Law Dictionary (10th ed. 2014) ("An interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a *specific limited purpose (such as to cross it for access to a public road)*." (emphasis added)).  We have held that the scope of a right-of-way is not limitless, *see generally Guild v. Hinman*, 1997 ME 120, ¶ 6, 695 A.2d 1190 (collecting cases), and that determining this scope "requires evaluation of the purpose it [the right-of-way] was to serve," *Badger v. Hill*, 404 A.2d 222, 225 (Me. 1979).

---

[14] The trial court found that the Cunner Lane Owners "have always had deeded rights-of-way over Cunner Lane and the five-foot strip."

[¶46]   Here, the trial court found that the Cunner Lane Owners' rights-of-way over the twenty-foot-wide corridor and the five-foot-wide strips were "meant for passage."   The Cunner Lane Owners' use of the disputed property, however, was not limited to mere passage.  Maintaining a lawn, caring for flowers, trees, and shrubs, installing irrigation systems and electric dog fences, and keeping driveways and mailboxes are all uses that are consistent with complete ownership; these uses are inconsistent with the Cunner Lane Owners' mere right to pass over the land conferred to them by their respective rights-of-way. *See id*; *cf. White v. Lambert*, 332 S.E.2d 266, 267-68 (W. Va. 1985) (affirming a trial court's determination that where a party planted shrubs and trees, buried a water line, and built a fence on an unused portion of an easement designated for "for ingress and egress," and generally used that portion of the easement as his "lawn," the party had successfully extinguished the original easement over the unused portion of the land by adverse possession).

[¶47]  Smith's own actions demonstrate that he believed that the Cunner Lane Owners had, at the very least, a hostile claim of possession over the disputed area.   In 1998, Smith became aware that Cunner Lane, as it then existed as a dirt road, was not in the correct location.   Despite that knowledge, he decided to pave the existing roadway up to the edges of the Cunner Lane

Owners' lawns. In so doing, he reinforced the Cunner Lane Owners' argument that they have used the disputed properties as their lawns—and not as rights-of-way. As the trial court correctly concluded, the Cunner Lane Owners' uses of the disputed area "exceeded the rights granted by the rights-of-way and therefore established hostility." *See Guild*, 1997 ME 120, ¶ 6, 695 A.2d 1190; *Badger*, 404 A.2d at 225.

[¶48] Furthermore, the Cunner Lane Owners' and their predecessors' use of the disputed land was under a claim of right, continuous, and exclusive; since purchasing their homes, the owners considered their respective properties to be their own and did not share them with others. *See Harvey*, 2014 ME 149, ¶¶ 15-16, 107 A.3d 604. Smith and Cunner Lane II ask us to look at each use by the owners in isolation, arguing that no single use satisfies the twenty-year requirement. This request is antithetical to our adverse possession precedents; we consider a claimant's activities "in the aggregate, i.e., in the context of a claimant's overall use of the property." *Id.* ¶ 19.

[¶49] When considering the Cunner Lane Owners' multiple uses of the disputed area "in the aggregate" and in the context of their "overall use of the property," the trial court's findings that the owners had satisfied the twenty-year requirement are supported by competent record evidence. *Id.*; *see*

*also Grondin*, 2014 ME 148, ¶ 13, 106 A.3d 1150; *D'Angelo*, 2005 ME 31, ¶ 6, 868 A.2d 239. Given this support, we do not disturb the trial court's conclusion that "for well over twenty years, the use of the disputed property by [the Cunner Lane Owners] has been comprehensive and complete" and "each [owner has] adequately supported the elements necessary to establish title by adverse possession to the disputed property up to the western and northwestern edge of the pavement."[15] (Quotation marks omitted); *see D'Angelo*, 2005 ME 31, ¶ 6, 868 A.2d 239; *Striefel*, 1999 ME 111, ¶ 7, 733 A.2d 984.

## III. CONCLUSIONS

[¶50] In summary,

- The court correctly determined that Fissmer, the Burkes, and the Gramses failed to establish that they owned the twenty-foot-wide corridor designated as Cunner Lane on the 1929 Plan pursuant to the Paper Streets Act.

- The court correctly granted Cunner Lane II a declaratory judgment that it holds record title to the twenty-foot-wide corridor designated as Cunner Lane on the 1929 Plan and to the five-foot-wide strips abutting Cunner Lane.

---

[15] Although we do not disturb the trial court's adverse possession determination, we must remand the case on this issue for the court to clarify the parties' new boundary lines. *See Hennessy v. Fairley*, 2002 ME 76, ¶¶ 27-28, 796 A.2d 41. Given the complexities of this case, including the need for a new assigned justice—because the justice who entered the judgment is no longer a Superior Court justice—a Rule 53 referee may be in order. *See* M.R. Civ. P. 53.

- The court erred in making any determinations concerning Siegel's ownership of Brook Road.

- The court erred in determining that, pursuant to the Paper Streets Act, Fissmer owns Sunrise Drive as depicted on the 1929 Plan.

- The court erred in declaring the Burkes and the Gramses owners to the centerline of Brook Road in its entirety because such a determination is overbroad.

- The court correctly concluded that Fissmer, the Burkes, and the Gramses had acquired title, by adverse possession, to the disputed property that they have used as their lawns, gardens, and driveways up to the paved edge of present-day Cunner Lane.

- Any adverse possession claim by Fissmer concerning the southernmost portion of the twenty-foot-wide corridor designated as Cunner Lane—the portion of that corridor to the south of her driveway—will require additional litigation.

- Any adverse possession claim by Fissmer concerning Sunrise Drive will require additional litigation.

- Any adverse possession claims by the Burkes or the Gramses regarding portions of Brook Road or portions of the five-foot-wide strips lining the road—to the extent that such strips do in fact curve off of Cunner Lane and down Brook Road—will require additional litigation.

- Any "additional litigation" undertaken may require the trial court to address the issue of res judicata.

The entry is:

> The portion of the judgment declaring Fissmer owner of the entire fee under Sunrise Drive is vacated and remanded to the Superior Court for entry of a judgment declaring Cunner Lane II owner of Sunrise Drive, as depicted on the 1929

Plan, and of the five-foot-wide strip alongside Sunrise Drive. The portion of the judgment declaring the Burkes, Gramses, and Siegel owners of the land to the centerline of Brook Road is vacated in part and remanded to the Superior Court for proceedings consistent with this opinion. The judgment is affirmed in all other respects. With regard to the adverse possession issue, however, the judgment is remanded for the purpose of legally establishing the parties' new boundary lines.

---

Kurt E. Olafsen, Esq. (orally), Olafsen & Butterfield LLC, Portland, for appellants David D. Smith, Cunner Lane, LLC, and Cunner Lane II, LLC

Kelly W. McDonald, Esq. (orally), and John B. Shumadine, Esq., Murray, Plumb & Murray, Portland, for cross-appellants Leslie S. Fissmer, Karen A.B. Burke, William A. Burke, Patricia M. Gramse, Richard R. Gramse, and Robert E. Siegel

Cumberland County Superior Court docket numbers RE-2016-292, RE-2017-243, and RE-2017-255
FOR CLERK REFERENCE ONLY